| Maus *against* Maus.

5 W  315
30 SC ²105

5w　　315
f 35 SC ²216

On the trial of a *scire facias* to revive a judgment with notice to terre-tenants, it is competent for the plaintiff to give evidence of the declarations of one under whom the terre-tenant claims title, made while he was the owner and occupier of the land.

A writ of *scire facias* to revive a judgment with notice to terre-tenants may be amended at any time, so as to make it conform to the original judgment; it may be amended after the counsel have argued the cause to the jury.

A plaintiff having issued a writ of *scire facias* with notice to several terre-tenants cannot enter a *nolle prosequi* as to some of them and proceed against the others.

Upon the trial of an issue upon a *scire facias* between the plaintiff and terre-tenants, and a finding against several terre-tenants, it is error to grant a new trial and *nolle prosequi* as to some of the defendants, and to render a judgment upon the verdict against the others.

ERROR to the common pleas of *Northumberland* county.

*Scire facias post annum et diem* at the suit of Lewis Maus for use, &c. against William Montgomery, administrator of Philip Maus, with notice to Joseph Maus, Lewis Maus, Elizabeth Maus and Philip Strawbridge.

Plea, payment with leave, &c. And Joseph Maus, Elizabeth Maus and Philip Strawbridge come, &c. and severally say that the said Lewis Maus ought not to have nor maintain his said writ or action against them, nor either of them; because they severally say that the several tracts of land whereof they are in occupancy and possession, or either of them, ought not to be charged with the said judgment, nor ought the said Lewis to have execution thereof; because, the said defendants say, that at the time the said judgment was rendered the said several tracts of land were severally and respectively the property and estate in fee of the said Joseph, Elizabeth and Philip, free, clear and discharged of and from any interest, estate or title of the said Philip therein; and free, clear and discharged of and from any lien, debt or incumbrance by the said Philip to the said Lewis thereon; and that they, the said defendants, and those under whom they respectively hold and claim the said lands, have held and occupied the same as their proper estates, in fee simple and adverse to all other persons whatever, from the 1st of October 1810 until the present time.

And they further say, that the lands they possess and occupy ought not to be charged with the said judgment, nor ought the said Lewis to have execution thereof; for, they severally say, that the said Philip Maus, by his last will and testament, bearing date the 15th of March 1810, devised to his son, the said Lewis, in fee a certain tract of land, situate in the county aforesaid, being part of the land called Frederick Maus's land, &c., containing one hundred and fifty acres; and the said Philip Maus in and by his will then and

[Maus v. Maus.]

there declared and provided, that the said devise or legacies before mentioned in his said will should be and operate as a complete bar against any claims upon his estate by any of his children; and that the said Philip Maus, to carry into effect more immediately the purposes of his said will, on the 18th of June 1810, by his deed of that date, granted the same tract of land to the said Lewis Maus in fee ; and the said defendants aver, that the said grant and conveyance to the said Lewis was for the purpose of extinguishing and satisfying all debts due by the said Philip to the said Lewis, and amongst them the debt from which the said judgment, recited by the said Lewis in his said writ, originated. And the said defendants aver further, that the said Lewis accepted said grant upon the said terms ; and, on the 1st of September 1818, accepted said devise under said will, and upon the conditions aforesaid therein declared; and this they are ready to verify, &c.

And the defendants further plead, that the several tracts of land whereof they are in occupancy and possession, or either of said tracts, ought not to be charged with the said judgment, nor ought the said Lewis to have execution thereof; because, they say, that the obligation or bill on which said judgment was obtained was given voluntarily, and without any consideration whatever; and that at the time said obligation or bill was given the said Philip Maus was not indebted to the said Lewis Maus in any sum of money whatever, &c.; and this they are ready to verify, &c.

Replication. To the first plea the plaintiff replies, that the said several tracts of land, in said plea mentioned, were not held by the said defendants in severalty, and were not the property and estate of the said Joseph, Elizabeth and Philip, free, clear and discharged of and from the debts for which said judgment was rendered; but that the said several tracts of land were and still are liable for and chargeable with said debts.

To the second plea, the plaintiff replies, that the said Philip Maus did not pay the said debt in his lifetime; nor has the same been paid since his death.

To the third plea, the plaintiff replies, that the said Philip Maus did not give the said single bills voluntarily and without consideration ; but that the said judgment was rendered in favour of Jacob Bachman for a debt honestly and justly due by the said Philip Maus, founded upon a valuable consideration ; and that the said Jacob, on the 10th of May 1817, assigned the said judgment to the said Lewis Maus for a valuable consideration ; and, further, that judgment was obtained against Philip Maus in his lifetime, and the defendants are estopped from inquiring into the consideration of the note upon which judgment was rendered.

The original judgment was obtained by Lewis Maus against Philp Maus, 27th August 1812, for 50 pounds, interest from 20th May 1809. A *scire facias, P. A. et, D.*, was issued to revive this judgment to November term 1813; another to April term 1819; ano-

ther to April term 1829; and the present one, with notice to the terre-tenants, to April term 1833; in each of which the original judgment for 50 pounds, was recited.  It appeared upon the trial of the cause that Elizabeth Maus claimed title to the land attempted to be charged under George Maus; and the plaintiff offered in evidence certain admissions of George Maus, made while he owned the land. The defendants objected to this evidence, but the court overruled the objection and sealed a bill of exceptions.

After the testimony had been given and the counsel for the defendant had concluded his argument to the jury, the counsel for the plaintiff asked to be permitted to amend the writ of *scire facias* so as to make it recite a judgment for 363 dollars and 38 cents, which upon a calculation was found to be the amount of the judgment with its accumulated interest upon the last judgment of revival to April term 1829.  This was objected to by the defendants but allowed by the court, who sealed a bill of exceptions at the request of the defendants.

The jury found a verdict "for plaintiff for 343 dollars, one-fourth to be charged upon the land of Lewis Maus, and the residue to be charged on the lands of George Maus, now in the possession of Elizabeth Maus, Joseph Maus, and Susannah Strawbridge."

The defendants moved the court for a new trial, which was granted as to Joseph Maus and Susannah Strawbridge, but refused as to Elizabeth Maus.  The plaintiff then suffered a nonsuit as to Joseph Maus and Susannah Strawbridge, and the court directed judgment to be entered on the verdict for the plaintiff against Elizabeth Maus. This was also the subject of exception by the defendants.

*Frick* and *Bellas*, for the plaintiffs in error, cited Thorp v. Smith, 2 *Watts* 387; M'Culloch v. Montgomery, 7 *Serg. & Rawle* 17; Vincent v. Huff, 4 *Serg. & Rawle* 298; *Arch. Prac.* 269; Penn v. Hamilton, 2 *Watts* 60; Kerper v. Hock, 1 *Watts* 9; Patterson v. Swan, 9 *Serg. & Rawle* 20.

*Greenough* and *Hepburn*, contra, cited Sauerman v. Weckerly, 17 *Serg. & Rawle* 116; Thompson v. Cross, 16 *Serg. & Rawle* 350; 2 *Penns. Prac.* 473; Arrison v. Commonwealth, 1 *Watts* 374.

The opinion of the Court was delivered by

KENNEDY, J.—The first and second errors are bills of exception to the opinion of the court in admitting evidence objected to by the counsel of the plaintiff in error.  It seems that Elizabeth Maus, one of the terre-tenants and plaintiff in error, claimed a part, if not the whole of the land, which she held, immediately from George Maus, who derived his title thereto from Philip Maus, the intestate debtor.  Any admissions therefore, made by George Maus, while owner of the land, tending to support the claim of the plaintiff below against it, would be admissible evidence against Elizabeth, the

[Maus v. Maus.]

same as against George himself, had he continued to have held the
land, and been warned as tenant under the *scire facias.* We there-
fore perceive no error in admitting the evidence.

The third error is, an objection made by the counsel for the
plaintiff in error, to the court below permitting the *scire facias,*
after the argument of the counsel had been concluded on the trial
of the *scire facias,* to be amended upon the application of the
counsel for the defendant in error, who was the plaintiff below, by
changing the amount of the judgment, as recited therein, from 50
pounds to 363 dollars and 83 cents.   The debt in the original judg-
ment, obtained in 1812, against Philip Maus, in his lifetime, was 50
pounds.   This judgment was revived by *scire facias,* in 1813;
and the judgment of 1813 was revived by *scire facias,* in 1819;
and that of 1819, was revived by *scire facias,* in 1829.   The judg-
ment given in a *scire facias* sued out here, upon a judgment in
debt, is not merely an award of execution for the amount of the
original judgment as it is in England; but having an act of assem-
bly, which authorises the recovery of interest upon the whole
amount of the original judgment, including both debt and damages
allowed for the detention thereof, from the date of its rendition, in
order to meet this a judgment of *quod recuperet* is given for the
aggregate amount of the first judgment, including both debt and
damages as a principal, and interest thereon up to the time of entering
it and an award of execution accordingly.   The amount, for which
the judgment is thus entered in the first *scire facias,* forms a new
principal, upon which interest commences, running until paid or
revived again by a *scire facias* sued out, not on the original judg-
ment, but upon the one given in the first *scire facias,* in which a
judgment is again entered for the amount of the judgment given in
the preceding *scire facias,* with interest thereon to the day of
entering it.   Accordingly every succeeding *scire facias* that is
sued out, recites the judgment on the last preceding *scire facias,*
and the judgment given therein is for the amount of the judg-
ment so recited with interest thereon from its date to the entry
of the new judgment.   By this course the *scire facias* is made
to subserve a double purpose, to wit; first, that of continuing the
lien of the original judgment down and connecting it with the
judgment entered in each succeeding *scire facias,* so that the origin
of the lien still continues to be the same, while the amount thereof
is constantly increasing by lapse of time and the costs accruing
upon the several judgments of revival; and second, that of recov-
ering interest upon the original judgment, which can only be done
in England by bringing an action of debt on it.   But the plaintiff
by doing so, does not gain the benefit of the lien of the origi-
nal judgment in the new action brought upon it with a view to
recover the interest due thereon.   Where no defence is made in the
*scire facias,* it is the business of the prothonotary, upon the judg-
ment's being entered to calculate the interest, and thus ascertain the

amount for which the judgment ought to be entered, and to set it down upon the record thereof. And should he happen to commit an error in doing so, either by making it more or less than it ought to be, there is no doubt but it may be corrected afterwards at almost any time, before being paid. It is never too late to amend the record merely for the purpose of correcting a misprision of the clerk. This is every day's practice and will be done after writ of error brought on account of it. Green *v.* Miller, 2 *B. & Adolph.* 781. Mansly *v.* Steacy, 4 *Taunt.* 588.

In such cases where there is always something to amend by, no injury can accrue from the practice to any one; as for instance, where the clerk has entered the judgment, " *de bonis propriis*" instead of " *de bonis testatoris*," it would be intolerable to reverse for such mistake; the court will direct the entry in such case to be amended instead of the judgment to be reversed. Green *v.* Bennet, 1 *T. R.* 782. So, a writ of *scire facias* will be directed to be amended by the record and made to conform to the judgment upon which it was intended to be sued out. Brasswell *v.* Jeco, 9 *East* 316. Perkins *v.* Petit, 2 *B. & P.* 275. And indeed courts seem to have carried the practice of amending the record still farther in order to give the plaintiff the benefit of his recovery where the record shows that by a trial upon the merits he has entitled himself to it. Accordingly, after judgment in ejectment from Ireland affirmed, the court amended the declaration by enlarging the term, though the record had been remitted to Ireland. Vicars *v.* Heydon, (Error) *Cowp.* 841. We feel satisfied that the court below committed no excess of authority in permitting the amendment to be made; on the contrary, we think it was their duty to do what they did. It was at most but a mere correction of clerical errors.

The fourth error, we think, has something in it. The verdict of the jury charged the three-fourths of 343 dollars, upon the lands holden respectively by Elizabeth Maus, Joseph Maus and Susanna Strawbridge; the first two of whom were warned as terre-tenants, but as to the third, Susanna Strawbridge, it does not appear how she came to the notice of the jury. In this there is probably some mistake, or something which ought to have been placed upon the record, that has been omitted. The court, however, set aside the finding of the jury, not only as to Susanna Strawbridge, but likewise, as to Joseph Maus; thus, throwing the whole three-fourths of the 343 dollars upon the land of Elizabeth alone. In England, the lands of the defendant to the judgment bound by it, which come afterwards into the hands of several purchasers, must upon execution sued out, be all extended and charged equally. This any one of the purchasers has a right to claim and to insist on, upon the principle of his being entitled to contribution. Hence, if a *scire facias* be sued out, upon which only one of two terre-tenants is warned by the sheriff, he who is warned may plead the fact of there being another tenant, whose land is also bound by the judgment, and that he has not been warned;

and thus compel the plaintiff to sue out another *scire facias* for the purpose of warning and making the other tenant a party to the proceeding, and the first cannot be compelled to answer further, until this shall be done. See Jefferson *v.* Morton, 2 *Saund. Rep.* 8 *c, et seq.* and also, *note* (10) by Sergeant Williams, page 9 *a.*

I do not know, however, that the tenant warned by the first *scire facias* would have the same right here, though I do not mean to say, that he would not; but there is certainly a difference between the mode of taking lands in execution in England and here. There the creditor, if he resorts to the lands of his debtor, is obliged to receive payment of his judgment out of the rents, issues and profits thereof, and if they be in the hands of several purchasers they must all be extended and charged equally, as already mentioned, for the purpose of dealing equitably with the tenants, by making each contribute his proportion and no more, to the payment of the judgment, And if the creditor should take out execution against the land of one alone, the tenant of the land taken in execution, may have relief by an *audita querela,* and compel the creditor to go against all the lands, unless he has suffered himself to be served with a *scire facias* as the only terre-tenant, and omits to plead that there are others, giving their names, &c. as mentioned above, in which case if execution be awarded against his land, he can have no relief or contribution. See Sergeant Williams, *note* (10) 2 *Saund.* 9 *a.* But here the judgment creditor has a right to obtain payment by a sale of any distinct, separate portion of the lands, provided the rents, issues and profits of it beyond reprizes, be found insufficient to pay the debt within the space of seven years, notwithstanding the judgment be a lien upon twenty different lots or tracts of land, in the hands, severally of as many different purchasers. But still the tenant whose land is taken and sold to pay the debt, if he stands *in equali jure* with the remaining nineteen tenants, will be entitled to contribution; and may recover it, if in no other mode, by an action on the case against each, for his proper proportion, according to the relative value of his land. Or it may be, that if he pays off the amount of the judgment, and thus prevents a sale of his land, that the court would permit him to use the judgment for the purpose of obtaining or securing to himself contribution. It may be of the first importance, indeed, to a party in some cases, who has paid more than his proportion of the debt, to have the judgment as a security at least, by means of which he may ultimately obtain contribution. And, although the court cannot of itself directly undertake to settle and determine the sum of money, that each of the tenants shall contribute, yet it can direct an issue to be formed for the purpose of ascertaining that, and every fact by a jury, that may be material and necessary to be known and established, so that the court may be able to direct the proceeding upon the judgment in such a manner as to compel each to pay his due proportion. Under the particular circumstances of this case, however, it does not appear to be absolutely necessary, that we

[Maus v. Maus.]

should decide whether one of two or more tenants of different tracts of land, bound by the same judgment, upon being warned by a *scire facias* sued out thereon, can compel the plaintiff to warn the others, and make them parties to the suit, before he shall proceed further in it. For he has of his own will warned them all here, and having done so, can he afterwards relinquish the proceeding against one or more without giving it up as to all of them? Can the court even grant him leave to do so? May it not prejudice the right of the party against whom the suit is continued and prosecuted as regards his obtaining contribution in case he should be compelled to pay? It certainly may, for if the suit were to be prosecuted against all, and finally it should be adjudged that the lands of all were liable, this would be one step gained by each towards maintaining his right for contribution against the others, in case he should be made to pay the debt; because, on settling the question of contribution among them, none of them would be permitted to deny the fact of his land having been equally liable with that of the others to the payment of the judgment: the judgment would be considered conclusive evidence on that point; and it also appears to me, that it would be *prima facie* evidence of their being bound to contribute to the payment of the debt according to the value of their respective lands. Being only *prima facie* evidence, however, for this purpose, it may, to be sure, be repelled by other evidence showing, that they do not stand *in equali jure*. For instance, one of three, being compelled to pay the whole debt, might be the heir of the defendant to the judgment, and hold his land by descent, while the other two were purchasers of their lands from the debtor for a valuable consideration; it is certain, that upon this being shown, the presumption arising from the circumstance of the execution of the judgment being awarded against the lands of the three, the first, upon paying the judgment, or upon his land alone being sold for that purpose, acquired a right to contribution, would be completely repelled: because, as against the latter two, he would have no equity at all, having paid nothing for his land. But still it cannot be denied, but the award of execution in the *scire facias* against the lands of all, who are warned as terre-tenants, is some evidence, say, at least, one link in the chain necessary to be made out, to support a claim for contribution by any one of them who shall have been compelled to pay the judgment, or more of it than his due proportion. Without the aid of such evidence, then it might frequently happen, that in the course of a very short time perhaps at the very time of his being compelled to pay the money, he would be wholly unable to maintain his claim for contribution, but by means of it he is enabled to establish incontrovertibly the joint liability of their lands, which otherwise he might not be able to do.

But under another view suggested above, it may be of the utmost importance to one terre-tenant, when there are more, that all should be made parties to the *scire facias*, and that there should be an award

v.—2 q

[Maus v. Maus.]

of execution against the lands of all, because notwithstanding his land alone may be taken in execution, and he compelled to pay the whole of the judgment, still he may obtain the benefit of the judgment, under the direction of the court, to enable him to recover contribution from the others, who may be insolvent, and therefore without the benefit of the judgment, which is the first lien upon their lands, he would be completely remediless.

Now from this view of the doctrine and principles which seem to be applicable to the case before us, it is evident, that Elizabeth Maus, the plaintiff in error, may be injured, and perhaps greatly too, by the course that has been adopted and is about to be pursued. For, although the evidence adduced on the trial, may not have been sufficient in the opinion of the court, who doubtless judged correctly as to it in this respect, to authorise a verdict against Joseph Maus or Susanna Strawbridge, if she was properly before the jury, which, however, does not appear to have been the case, yet upon another trial, Elizabeth, if she is not able to show that her lands are held free of the judgment, may prove by additional evidence, which unquestionably she has a right to do, if she can, that the lands holden by Joseph Maus and Philip Strawbridge, who seem to have been warned, but lost sight of altogether on the trial, are equally liable to pay the judgment with her own. If this were the case of a claim founded upon a tort, where the right of contribution could not exist among the defendants, setting aside the verdict as to some of the defendants only when it was against all, might possibly be right enough, but here the case is altogether different, as we have shown. The court we think ought either to have set the verdict aside as to all or else as to none; so that the footing upon which the defendants stood, both in relation to the judgment and to each other, might ultimately have been decided by a jury under the advice of the court, as long as any one of them desired it. We also think that it is not competent for the plaintiff, in the judgment, to enter a *nolle prosequi*, as to one or more of the terre-tenants, without doing so as to all, or if he persists in doing so, it will operate in favour of all. We think, therefore, that the fourth error has been sustained, and that the judgment of the court below must be reversed on account of it.

The question attempted to be raised by the fifth error, which is the only remaining one that has been assigned, is not presented by the record, and therefore, cannot be noticed; but I think it probable that the case of Fetterman and Murphy, in 4 *Watts*, is conclusive of it.

Judgment reversed, and a *venire de novo* awarded.