## MAGDELENA ELSASSER, EXECUTRIX OF JOHN M. ELSASSER, DECEASED, v. NATHAN HAINES.

1. A judgment founded on a recognizance entered in the court of a state, on the return of two successive writs of *scire facias*, "*nihil habet*," will be regarded as valid and conclusive in this state.
2. Such judgment is not a procedure *coram non judice*, inasmuch as the act of confessing the debt of record gives jurisdiction to the court over the person of the conusor.
3. A recognizance is not within the bar of the statute of limitations of this state.

Demurrer to pleas.

The declaration contained two counts. In substance, the first stated the following facts, viz.: That the plaintiff, on the 10th of October, 1868, obtained a judgment in the District Court for the city and county of Philadelphia, in the State of Pennsylvania, for a certain sum of money, against one William E. Owens; that a *fieri facias* was issued thereon; that afterwards, on the 20th of October, 1868, "at the September Term of the said District Court for, &c., the said defendant, in his own proper person, came before the said District Court, and then and there, in open court, acknowledged himself to be holden and bound to the said plaintiff in the sum, &c., for the said William E. Owens, upon condition that if the said William E. Owens should not pay the amount of the said debt, interest and costs which had been recovered against him as aforesaid, in the District Court aforesaid, before the expiration of nine months from the third Monday of September, 1868, then the said defendant would pay the amount of the debt, interest and costs aforesaid for him, the said William E. Owens;" that said recognizance was approved of by said court and was entered into for the purpose and in conformity of an act of the legislature of Pennsylvania, the substance of which was set out to the effect "that every defendant, in any

judgment obtained as aforesaid, may, upon entering security in the nature of special bail, have a stay of execution thereon during thirty days from the rendition of such judgment, and if during that period he shall give security, to be approved by the court, or by a judge thereof, for the sum recovered, together with interest and costs, he shall be entitled to the stay of execution " for a time specified; that said judgment remaining unpaid after the lapse of the time specified, a writ of *scire facias*, " according to the practice of the said District Court and the rules of the common law, upon said recognizance issued out of said court," directed to the proper officer, against the said defendant, and was duly returned to the said court by said officer "*nihil habet;*" that a second *scire facias* was similarly issued and returned, and thereupon judgment was rendered on said recognizance against said defendant by said District Court, &c.

To this count the defendant pleaded *actio non*, because he was never served with process in said suit; that he did not appear to said suit in person or by attorney; that he was not resident nor present within the jurisdiction of the said District Court at any time pending said suit, or when judgment was rendered therein; and this he is ready to verify, &c.

This plea was demurred to.

The second count was founded on the recognizance itself, mentioned in the first count above set out, and to this count the defendant pleaded that the supposed cause of action did not accrue within sixteen years before the commencement of this suit, &c.

This plea was also demurred to.

Argued at June Term, 1889, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and SCUDDER.

For the plaintiff, *C. H. Beasley.*

For the defendant, *M. R. Sooy.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   The two questions involved will be considered *seriatim*, as they are raised upon the record.

The first count of the declaration is based on a judgment upon a recognizance rendered in the District Court of the city and county of Philadelphia.

From this narration of the ground of action it is shown that the plaintiff obtained a judgment in the court just mentioned against one Owens; that by a statute of Pennsylvania a defendant was entitled to a stay of execution for a definite period by giving security in a certain mode for the sum recovered, and that the defendant, in order to obtain for said Owens the benefit of that provision, "in his own proper person," in the language of the pleading, "came before the said District Court, and then and there, in open court, acknowledged himself to be holden and bound to the said plaintiff in the sum of six hundred dollars, upon condition that if the said William E. Owens should not pay the amount of the said debt, interest and costs which had been rendered against him as aforesaid, in the District Court aforesaid, before the expiration of nine months from the third Monday of September, in the year of our Lord one thousand eight hundred and sixty-eight, then the said defendant would pay the amount of the debt, interest and costs aforesaid for him, the said William E. Owens." It is then averred that the time specified having elapsed without payment, two successive writs of *scire facias*, according "to the practice of said District Court and the rules of the common law," were issued, and which having been respectively duly returned *nihil habet*, a judgment was thereupon entered in said court on such recognizance in favor of the plaintiff against the defendant.

The defendant, by the force of his plea, does not deny that he made the recognizance in question, nor that it was forfeited and that judgment was entered upon it by the methods and in the manner stated, but, by way of avoidance of it, sets up that he was not served with process in the suit; that he

did not appear thereto by person or by attorney, and that he was not resident or present within the jurisdiction of the said court, &c.

It is obvious from this summary of the pleadings that the contention of the defence is, that although the judgment in question may possibly be valid in the State of Pennsylvania, where it was rendered, it is destitute of all legal force outside of that domain, for the reason that the adjudicating court had no jurisdiction over the person of the defendant.

Inasmuch as the judgment referred to has all the effect of a judgment *in personam*, there can be no doubt touching the correctness of this position if the fact upon which it rests be conceded. The declaration in the constitution of the United States, "that full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state," and the act of congress supplementing this provision, do not apply to the instance of a general judgment against a person over whom the court had no judicial authority. Such an unauthorized magisterial procedure in a state is regarded in all the other states as a nullity, and to which, consequently, the constitutional mandate is not applicable. This doctrine is so absolutely settled by a train of decisions in both the federal and state courts, that it must be assumed as an *admission* in every discussion of the subject.

Therefore the only point for decision in the present case relating to this subject is, whether the judgment now in question is one of those just mentioned; that is, a judicial determination against a person with respect to whom the court had no right of judicature.

The suit in question was based upon a recognizance, the procedure being two successive writs of *scire facias*, returned *nihil habet*, and judgment thereupon. This was plainly a proceeding in conformity with the practice of the common law; consequently, it will be observed that the proposition on which the defence rests is this, that all judgments obtained by force of this ancient method were *coram non judice*, and therefore absolutely void. If this be so, then the startling fact is ex-

hibited that from the remotest antiquity it has been customary for the English courts to sanction judgments of this abnormal character, and this, so far as appears, without protest or even criticism. And yet it is certain that the act of rendering a personal judgment against a defendant who was without notice of the proceeding, and who had not been afforded an opportunity to be heard, would have been as repugnant to the genius of the common law as it would be to the principles of natural justice. The entire procedure of outlawry stands as a monument of the truth of this observation, for that formula originated in the theory that before a cause could go to judgment, the defendant should not only be summoned, but should be present in court, and that such presence should be manifested by the record. Evidently, if these proceedings on recognizances be liable to the stigma now sought to be cast upon them, they were and are mere excresences upon the system of which they formed a part; and, in this view, the circumstance seems absolutely unexplainable that in the whole compass of legal literature, neither in commentary nor in report, is there any intimation that such a course of judicial action was regarded as being incompatible with the methods of ordinary practice or with the rules of legal science. And if we add to this weighty consideration the further fact, that this form of judgment, now so harshly denounced as being incongruous with one of the indispensable rudiments of law, has not only thus been accepted by the courts at Westminster for a period beginning before the Year Books, but has been also so accepted by the courts of almost every state of the union, as well in Pennsylvania, in which the present procedure originated, as in this state, in which it is now challenged, we have a situation which of itself would strongly incline the mind to the belief that there must, of necessity, be some error in the contention that the procedures in question are, in point of fact, judgments in personam by courts having no jurisdiction over the person against whom they are rendered.

The great importance of this question is obvious, for if it be true that a judgment entered against a defendant in his

absence in the old mode, or its equivalent, is a proceeding in a court devoid of all jurisdiction in the matter, the result must be, that all these various recognizances are unenforceable as long as the conusor absents himself from the state in which they were entered into. Such a doctrine must necessarily abrogate all the statutory regulations that exist in this state on the subject. If in these instances it be conceded that the court has no jurisdiction, it follows as a necessary consequence that the entire proceeding culminating in the judgment cannot be possessed of a shade of legality, even within the territory in which it was transacted, for assuredly no part of such procedure would constitute due process of law; and that being the case, the recent amendment to the federal constitution illegalizes the entire affair, so that in a legal point of view it is an absolute nullity. Formerly a judgment entered in the way provided by the statute of a state was sometimes held to be enforceable in such state, even though the court officiating were not possessed at the time of jurisdiction over the person of the defendant according to the general principles of law and justice, as where such defendant was a non-resident and no process had been served upon him, and no notice had been given except by way of public advertisement, at the same time it being conceded that such judgment would not be recognized exterritorially; but now, by force of the addition to the federal constitution just adverted to, such judgment would be of no legal avail either at home or abroad. In *Pennoyer* v. *Neff,* 95 *U. S.* 714, it was conclusively settled that a sale of land under execution by force of a judgment obtained in a state court, in conformity with the local statute, against a non-resident, who was not served with process and who did not appear, was a void act, so that no title passed.

It is, therefore, undeniable that if the procedure now in question is to be rejected as inoperative and void, so must every judgment on a recognizance be similarly everywhere rejected that is not founded on a personal summons to the party, or on his voluntary appearance. Under the prevalence of such a principle there would seem to be no possible process

that could be devised whereby a judgment could be legally
entered upon a recognizance in the court in which it had been
given, in case the conusor had left and remained out of the
state.

In the present case it seems to me that in all essential
respects the strict line of the common law practice was pur-
sued. The defendant being absent, there were two successive
writs of *scire facias* regularly returned "*nil habet.*" Accord-
ing to the ancient course this warranted the judgment. It is
true that by force of a statute of Pennsylvania a judgment
*quod recuperet* has been substituted for the award of execution
to the conusee. But this is a mere difference of form; the
two judgments appear to be precisely equipollent. At com-
mon law the award of execution on the record of the debt
confessed established conclusively the existence of such record,
and that the debt established by it remained at the time un-
paid and undischarged, and that the conusee was entitled to
raise such money by any of the ordinary writs of execution.
A judgment *quod recuperet* would appear to be possessed of
no greater efficacy than this. In both cases the judgments
are *in personam,* and they are equally operative on the
lands and chattels of the conusor within the jurisdiction of
the court which are owned by him at the time or which he
may subsequently acquire, and the one judgment, as well as
the other, under the same circumstances, will support a *ca. sa.*
It would seem, consequently, quite unreasonable to maintain
that a procedure that will validate one of such judgments will
not have a similar efficacy with respect to the other. The
two procedures are, as to substance, alike, and it does not
seem to me that the idea ought to be tolerated that the judi-
cial action of the court of a sister state is to be rejected on a
shadowy distinction founded on a form of entry. In settling
these judicial transactions between the states, resting as they
do, in part, upon constitutional mandate, and in part upon
international comity, matters of procedure should, as far as
practicable, be put out of sight, and the questions presented
should be tested by a reference as little as possible to mere

form, and as much as possible to the fundamental principles and maxims of jurisprudential justice. Referring to this subject, Judge Story forcibly says: "Every such judgment ought to be presumed to be correct and founded in justice." *Story Confl. L.*, § 1304. In my estimation, the judgment now in question, with respect to its legal effect, is substantially the same as a common law judgment of the same class, and while a distinction between them may be predicated, no real difference can be shown.

And, indeed, if even a marked and substantial difference could be exhibited, it is not perceived how such fact could, in any degree, affect the determination of the present inquiry. That inquiry relates altogether to the question, whether, under the circumstances presented, the District Court of Philadelphia, by force of the procedure adopted, had such jurisdiction over the person of the defendant as to warrant the rendition of the judgment now before us. It would seem self-evident that if such jurisdiction existed, so as to validate the entry of a common law judgment awarding an execution, the same scope of cognizance over the person would, of necessity, legalize the entry of this statutory judgment *quod recuperet.*

The result is that, in my view, we have here a judgment entered in entire conformity with the principles and practice of the common law, and from such conclusion it seems to me the necessary corollary that such procedure cannot be impugned exterritorially by the court of any state, on the ground that it was *coram non judice.*

The English common law forms the basis of American jurisprudence, and, for my part, I am ready to adopt it as an axiom, that every judgment rendered in the court of a state in a civil proceeding, according to that system and with the assent of the local law, must, by force of the federal constitution and statute, be accepted by the tribunals of every other state as possessed of an unquestionable legality. It is not perceived that this broad proposition, in the most distant

degree, conflicts with anything that is possessed of judicial authority.

It is obvious that the principle thus formulated altogether excludes the idea that at the common law any judgment of a civil nature which was *coram non judice* was authorized or regarded as valid.   To give even the semblance of obligation to judicial action, it was necessary, according to the ancient English system, that a man should have been summoned, or should have voluntarily appeared, to the action before his rights could be adjudged.   The inquiry, therefore, arises, and it involves the entire issue now before the court, How was it that judgment could go against a conusor who had not been served with the *scire facias?*

The answer is, that by the form of the procedure, of which the writs of *scire facias* formed a part, the conusor voluntarily made himself a party to the proceeding.   He went into court and confessed a debt subject to a condition, with the knowledge that if he absented himself from the jurisdiction a judgment might be taken against him on the return of two unserved writs of *scire facias*.   Such was the legal effect of the act done by him, and in intendment of law he was held to have assented to such effect.   If, when he confessed the debt, he had expressly consented, in pursuance of a local statute, to the entry of a final judgment of this nature on the return of two unserved writs of *scire facias*, it is presumed it would not be contended that a judgment entered in accordance with such stipulation would not have been of unquestionable validity; and yet as he is chargeable with the knowledge when he entered into this recognizance that such result would obtain, according to the laws then in force, the tacit assent to such procedure wants but little of the force that would have resided in such supposed positive agreement.

Nor is there any hardship which can arise out of such an interpretation of this legal procedure.   If the conusor has any defence which he desires to interpose to the movement to enter judgment against him, he has his day in court for that purpose, for he is aware that he has, to that end, until the return

of the second writ of *scire facias*, and by the exercise of ordinary diligence he can keep himself informed with respect to the running of such writs. In such a course of law nothing is perceived of which the defendant can justly complain; at all events it is a proceeding to which he has voluntarily submitted himself, and has thereby impliedly assented to it from its inception to its obvious conclusion. And, indeed, as long ago as the Year Book (10th ed., 3, 18), this method of judgment emanating from the recognizance appears to have been referred to as resting in the assent of the conusor.

This method of proceeding that we are now considering has its analogues in other departments of the law. This is exemplified strikingly in the case of proceedings by writs of error. In *Nations* v. *Johnson*, reported in 24 *How.* 195, the question was presented whether a notice by publication to a defendant in error, who had removed out of the state in which the judgment had been rendered, was sufficient to make the final judgment binding and conclusive on him. The state court of last resort in the case had set aside the original judgment and substituted a new one materially affecting the interest of the defendant in error.

It is plain that a proceeding in error has more of the semblance of an independent action than has the course pursued on a recognizance by *scire facias*. The latter is but a judicial writ, whereas process in error is by original. The defendant in error could plead the general joinder to the assignment of errors, or he could put in a special plea, or he could demur. He could raise up an issue of fact, as, for example, a release of the errors, or the statute of limitations. Notwithstanding these qualities and attributes of the procedure, the Supreme Court of the United States, in the case cited, declared that it was to be regarded as a continuation of the suit in the court of the first instance rather than as a separate action, the principle of decision being defined in these words: "And where, as in this case, the record shows that the defendant appeared in the subordinate court and litigated the merits there to final judgment, it cannot be admitted that he can defeat an appeal

by removing from the jurisdiction, so as to render a personal
service of the citation impossible. On that state of facts, ser-
vice by publication, according to the law of the jurisdiction
and the practice of the court, we think is free from objection,
and is amply sufficient to support the judgment of the appel-
late court."

It seems manifest that if the appearance of the defendant in
the inferior court, complemented by a publication in a gazette,
could legalize this ultimate judgment, no reason can be shown
why a similar effect should not be given to the present recog-
nizance and the process and judgment founded upon it.

With respect to the state of the authority, there appears to
be but a single pertinent case, which is that of *Delano* v.
*Jopling*, 1 *Litt.* (*Ky.*) 118. This decision is directly in point,
the court holding that a judgment similar to the present one
was of unquestionable authority everywhere within the United
States.

There were some decisions cited from the New York reports,
touching which it is sufficient to say that none of them have,
so far as is observed, the least relevancy to the question above
considered.

The demurrer on this point must be sustained.

The second question to be determined is, whether the
statute of limitations of this state is applicable to a recog-
nizance.

This inquiry relates to the fourth section of the act relied
on, which, as far as applicable, is as follows, viz.: "That
every action of debt, or covenant for rent founded upon a lease
under seal, whether indented or poll, and every action of debt
upon any single or penal bill for the payment of money, or
upon *any obligation with condition for the payment of money
only*, or upon any award under the hands and seals of arbi-
trators for the payment of money only, shall be commenced
and sued within sixteen years next after the cause of such
action shall have accrued, and not after; but if any payment
shall have been made on any such lease, specialty or award
within or after," &c.

From the foregoing citation, it is manifest that if this section applies to a recognizance, it is altogether by reason of the force of the phrase " obligations for the payment of money only."

Plainly, there can be no denial that the expression " obligation," in its common acceptation, will embrace every duty imposed by law, whether such be the creature of a statute, of a record, of a recognizance, of a sealed instrument, or of a simple contract. But that the word was not used with this compass of import in this context is self-evident. Possessed of such wide meaning, the term would stand in this section of the act not only as an incongruity, but, in view of any rational construction of it, as an impossibility. Indeed, any attempt to give it so wide a scope would appear to be the *reductio ad absurdum,* for it would be applicable not only to all the cases regulated by the section in which it is found, but also almost to all of the cases regulated in the other sections of the statute. Therefore it requires no argument to show that the term, as here used, cannot be possessed of that wide reach of import that inheres in it in common use.

But the term has in law a secondary and limited signification, whereby it is made to express but a single class of instruments, those which are under seal and stipulate for the payment of money. That the word has both this general and particular meaning cannot be questioned. Thus, Lord Coke says : " Obligation is a word in its own nature of a large extent, but it is commonly taken in the common law for a bond containing a penalty with condition for the payment of money," &c. In the accurate abridgement of Bacon, under the title " Obligation," no instruments are treated of except such as are under seal ; and Littleton employs the terms " recognizance" and " obligation " by way of antithesis, his language being : "A judge or justice may take a *recognizance* of the party, but the sheriff cannot take anything more than an *obligation."* Similarly the same two words are put in opposition by Mr. Brown in his learned work on the practice of the law, in that part of it that treats of the marshaling of

assets in the administration of estates, the passage referred to being as follows: "Notwithstanding the case in 40 *Eliz.*, it is clear at common law that a statute or *recognizance* might be of equal dignity with a judgment and allowable before debts by *obligation* or simple contract."

That the term had the restricted force thus indicated when used strictly according to legal terminology, cannot be doubted, and it seems to me it is plain that it was thus used in the statutory clause under criticism.

Accepting the word as here used in this sense, it becomes of course apparent that the legislative purpose in this section was to establish a rule with respect to actions of a single class, that is to say, actions upon sealed instruments for the payment of money only. On this assumption the language of the clause becomes clear, appropriate, definite and entirely congruous, so much so that it does not call so much for construction as simply for interpretation. The statutory adjustment stands, on this theory, thus: first, a provision for limiting actions in four specified cases, viz., on sealed leases, on single and penal bills and on sealed awards. If the clause had stopped at this point it would have been incomplete, for a number of other sealed instruments for the payment of money would have remained unregulated, and hence the necessity for its extension to suits on "obligations for the payment of money only." In this view every word, as it stands in the section, is apt and perspicuous, and all parts of the section coherent and harmonious.

But, on the contrary, if we impute to this word "obligation" its common instead of its technical signification, we are in the midst of discord, as has heretofore been shown. As the phrase actions on "obligations for the payment of money only" would thus comprehend every suit that could be brought on a money demand, and as it is obvious that it could not be enforced in that scope, how is the proper field of its operation to be defined? The work would be attended with difficulty. Let us look at a single example. It is now claimed that the expression "obligations for the payment of money" is compre-

hensive of recognizance for the payment of money. If this be so, will it not also embrace money claims by force of a statute? And yet it has never been supposed such latter claims had been subjected to any legislative regulation. It would appear to be incontestable that the phrase must extend itself over both of such causes of action or over neither, for it would be a singular canon of construction whereby one of the two would be included and the other excluded.

It should likewise be observed that there is nothing in the nature of a recognizance of this character that would give rise to a presumption that the intention must have been to include it among the subjects regulated in this section. A recognizance has more of the nature of a judgment than of a contract; it exists in a judicial record, and as soon as it is enrolled, like a judgment, it becomes a lien upon the lands of the conusor. Actions on judgments and recognizances, in most of the states, are uncontrolled by statutory limitations, being left to the regulation of the common law, which presumed payment after the lapse of twenty years. In New Hampshire, by statute, judgments and recognizances, in this respect, are put upon an equal footing. There is no natural probability, therefore, that it was the legislative design in this section to classify recognizances with sealed instruments, and to regulate them on the same basis.

There is also a further indication in this section that seems to me to antagonize such a supposition. The ear-mark referred to appears in the clause that defines the force of part payment of the claims previously put under regulation. The language is this: "But if any part payment shall have been made on any such lease, specialty or award," &c. By looking at the regulating clause it will appear that the term "specialty" is here applied to the three following money claims, viz., to single bills, to penal bills, and "obligations for the payment of money;" and thus we have the express declaration of the legislature that the term "obligation," as it stands in this section, is synonymous with "specialty," a word which, in its technical signification, imports an instrument under seal for

the payment of money. The term " specialty," it is true, is sometimes employed in a loose way of being invested with a more extensive meaning; but when precision is important the term is used with the limited force just assigned to it. In the present case we find the word introduced with the nicest discrimination; it is not applied to leases under seal, which may or may not be specialties, nor to awards which are not specialties, but to single or penal bills, and to obligations, which are plainly specialties, construing the last term in its technical sense.

That these words, "obligation" and "specialty," were used in their technical sense, seems to me clear. The section is remarkable for the perspicuity and propriety of its language; it was drawn by Judge Paterson, and in all its parts exhibits the hand of that master of legal phraseology; and under the conditions of the case, it would be, in my judgment, an unreasonable assumption to hold, that, in this section, both the term "obligation" and the term "specialty" were used loosely, and not in their purely legal sense.

My conclusion is, that a recognizance is not affected by our statute of limitations, and that consequently the plaintiff is entitled to judgment on the demurrer in question.

DEPUE, J. (dissenting). The declaration contains three counts. To the first and second counts the defendant pleaded *actio non*, because he says that he was never served with any process in the suits in which the judgments in the first and second counts of said declaration mentioned were obtained; that he did not appear to said suits in person or by attorney, and that he was not resident nor present within the jurisdiction of the said court in which the said judgments were rendered at any time pending the said suits, or when judgment was rendered therein.

To the third count the defendant pleaded the statute of limitations—that the cause of action in that count mentioned did not accrue at any time within sixteen years before the commencement of this suit.

To each of these pleas the plaintiff filed a demurrer.

The first count of the declaration is founded upon a judgment recovered by the plaintiff against the defendant in the District Court of the city and county of Philadelphia, in the State of Pennsylvania, for a certain sum, and is in the usual form of a count in debt upon a judgment of a court of record.

A judgment *in personam* recovered in a court of record of a sister state, when made the foundation of an action in the courts of another state, is impeachable for want of jurisdiction of the person. A personal judgment, without jurisdiction of the person first obtained, is a nullity. *D'Arcy* v. *Ketchum,* 11 *How.* ·165; *Knowles* v. *The Gas Light Company,* 19 *Wall.* 58; *Pennoyer* v. *Neff,* 95 *U. S.* 714; *Moulin* v. *Insurance Company,* 4 *Zab.* 222; *Price* v. *Ward,* 1 *Dutcher* 225; *Mackay* v. *Lusher,* 5 *Vroom* 286. This plea, in substance, is the same as the plea that was approved by this court in Price *v.* Ward, and Mackay *v.* Lusher.

The second count avers that the plaintiff recovered a judgment in the District Court of Philadelphia against one William E. Owens, for debt and damages; that the defendant in this suit entered into recognizance of special bail for stay of execution thereon; that two writs of *scire facias* upon the recognizance were returned *nihil habet;* that thereupon the plaintiff, by the consideration and judgment of the said court, and according to the practice of the said court, recovered the sum of $338.59, by the said court adjudged to her for debt, damages and costs, whereof the said defendant was convicted, as by the record and proceedings thereof remaining in said court more fully appears.

In this count the plaintiff declares on a judgment of the Pennsylvania court, recovered in proceedings by *scire facias* on recognizance. The defendant denies the validity of the judgment as a cause of action in the courts of this state, for the reason that it was entered without service of process upon him; without an appearance by him, either personally or by attorney, and without his residence in or presence within the jurisdiction of the court. The ground on which the defendant

impeaches the judgment is such as is within the general rule which denies validity to judgments *in personam* recovered under like circumstances.

There is nothing in the nature of a recognizance that will take a judgment *in personam* upon it out of the rule that a judgment *in personam* without a voluntary appearance or service of process, other than constructive service, is a nullity. A recognizance is a bond of record, testifying the recognizor to owe a sum of money to some other. *Dalton, ch.* 186 ; *Hutchins* v. *Player, O. Bridg.* 302 ; *Wood Inst.* 81. Recognizance is a bond or obligation of record. *Jac. Law. Dic., tit.* " *Recognizance.*" A recognizance is an obligation of record, which a man enters into before some court of record or magistrate, duly authorized, with condition to do some particular act, as to appear at the assizes, to keep the peace, to pay a debt, or the like. It is, in most respects, like another bond, the difference being chiefly this, that the bond is the creation of a fresh debt, or obligation *de novo ;* the recognizance is an acknowledgment of a former debt upon record. 2 *Bl. Com.* 341 ; 4 *Cruise Dig.* 95, § 14. It is an obligation like any other contractual obligation, to be enforced by suit, which may be either in debt or by *scire facias,* according as a general judgment *quod recuperet,* or a special judgment that execution do issue, is sought. If the suit had been in debt, it is incontestable that the judgment would be a nullity.

Nor is there anything in the circumstance that the process was in *scire facias,* instead of a process in debt, that alters the situation. By the common law a *scire facias* to revive a judgment is the continuation of the former suit, but if founded upon a recognizance it is an original proceeding. 1 *Saund.* 71*a, note* ; 2 *Tidd* 1125, 1150 ; *Freem. Judg.,* § 444. Mr. Foster divides the subjects to which the writ of *scire facias* is applicable into three classes : first, where it is necessary *to continue a former suit to execution ;* secondly, where it is *in the nature of an original action,* as to have execution upon a recognizance ; and, thirdly, where it is an *original action,* as to revoke a grant by letters patent. *Fost. Sci. Fa.* 15. At

common law the judgment on *scire facias* to revive a judgment was that execution do issue. Hence the proceeding was regarded as the continuation of the suit in which the original judgment was recovered. In *scire facias* upon a recognizance the writ does not pray a judgment *quod recuperet*, and the judgment awarded is that the plaintiff have execution according to the force, form and effect of the recognizance. *Arch. Forms* 256, 258 ; *State* v. *Stout*, 6 *Halst.* 129. The judgment is not to *recover*, but to *have execution*. *Gee* v. *Fane*, 1 *Lev.* 225, 227. In *scire facias* to repeal letters patent, if successfully prosecuted, the crown obtains an affirmative judgment, that the letters patent be revocated, canceled, &c. *Fost. Sci. Fa.* 272. Hence the distinction on which a *scire facias* for execution upon a recognizance is described as in the nature of an original action, and a *scire facias* to repeal letters patent an original action. The form of the judgment to be recovered determines the nature of the action.

Under the common law form and effect of a judgment in *scire facias* it would be of no consequence in this inquiry whether the suit be considered as an original action or in the nature of an original action ; for the judgment awarded would be simply that execution do issue, the operation of which would necessarily be limited within the jurisdiction of the court in which the recognizance was taken, for the *scire facias* could not issue out of another court. No judgment *quod recuperet* on which an action would lie would be the outcome of the proceedings. In Pennsylvania the common law rule has been departed from. In *scire facias* to revive a judgment the common law form of judgment, that execution do issue, is not adhered to ; a new judgment is given *quod recuperet*. *Freem. Judg.*, § 443 ; *Freem. Exec.*, § 81 ; *Maus* v. *Maus*, 5 *Watts* 315 ; *Shaeffer* v. *Child*, 7 *Id.* 84 ; *Collingwood* v. *Carson*, 2 *Watts & S.* 220. In Shaeffer *v.* Child, the court said that "with us a judgment on *scire facias post annum et diem* is *quod recuperet*, not, as elsewhere, an award of execution." The record in this case discloses this departure from the common law in *scire facias* upon recognizances. The judgment is

not that execution do issue, but a new judgment is given *quod recuperet* for a definite sum, in the common law form of a judgment in debt. In the courts of that state the writ of *scire facias*, as process, is diverted from its office at common law and made to take the place of process in an ordinary action of debt. In *Troubat & Haley's Practice*, in the courts of Pennsylvania it is said, that the *scire facias* on a recognizance of bail for stay of execution is in the nature of a new original. 2 *Troub. & H. Pr.* § 2042. Calling the proceeding *scire facias*, complaint, or in the name and style of any process known to the common law, will not detract from the force of the principle that a judgment *in personam* without jurisdiction of the person is a nullity.

The extra-territorial nullity of a judgment *in personam* without jurisdiction over the person no longer stands exclusively on principles of international law. The fourteenth amendment to the federal constitution, as interpreted by the Supreme Court of the United States, prescribes a rule which, in other courts, is final and conclusive. As construed by that tribunal, the term "due process of law," in the constitutional amendment, when applied to judicial proceedings, means a course of legal proceedings according to those rules and principles which have been established for the protection and enforcement of private rights, and that to give such proceedings any validity there must be a competent tribunal to pass upon the subject matter; and if that involves a determination of the personal liability of the defendant, he must be brought within its jurisdiction by service of process within the state, or by his voluntary appearance; that where the suit is *in personam*, substituted service by publication or otherwise, is ineffectual. *Pennoyer* v. *Neff*, 95 *U. S.* 715, 727, 733; *St. Clair* v. *Cox*, 106 *Id.* 350. In *Pennoyer v. Neff*, Mr. Justice Field, in delivering the opinion of the court, said: "In all the cases brought in the state and federal courts, where attempts have been made under the act of congress to give effect in one state to personal judgments rendered in another state against non-residents, without service upon them, or

upon substituted service by publication, or in some other form, it has been held, without an exception so far as we are aware, that such judgments were without any binding force, except as to property, or interest in property, within the state, to reach and effect which was the object of the action in which the judgment was rendered, and which property was brought under control of the court in connection with process against the person. The proceeding in such cases, though in a form of a personal action, has been uniformly treated, where service was not obtained, and the party did not voluntarily appear, as effectual and binding merely as a proceeding *in rem,* and as having no operation beyond the disposition of the property, or some interest therein."

Pennoyer *v.* Neff has been repeatedly recognized and approved in subsequent decisions of the Supreme Court of the United States. *Empire* v. *Darlington,* 101 *U. S.* 87; *Harkness* v. *Hyde,* 98 *Id.* 476; *Insurance Company* v. *Bangs,* 103 *Id.* 435, 441; *St. Clair* v. *Cox,* 106 *Id.* 350; *Pana* v. *Bowler,* 107 *Id.* 529, 545; *Hart* v. *Sanson,* 110 *Id.* 151, 155; *Smith* v. *Woolfolk,* 115 *Id.* 143, 149; *Freeman* v. *Alderson,* 119 *Id.* 185, 188. The only peculiar feature in that case is the fact that it was considered that whilst federal courts sitting in a state are not foreign tribunals in their relation to the state courts, they are tribunals of a different sovereignty, and are bound to give to the judgments of the state courts only the same faith and credit which the courts of another state are bound to give to them. In *Hart* v. *Sanson,* 110 *U. S.* 151, 155, Mr. Justice Gray, speaking of a decree of a state court removing a cloud upon title made upon a citation by publication, said : "The courts of the state might, perhaps, feel bound to give effect to the service made as directed by its statutes. But no court deriving its authority from another government will recognize a merely constructive service as bringing the person within the jurisdiction of the court. The judgment would be allowed no force in the courts of any other state; and it is of no greater force, as against a citizen of another state, in a court of the United States, though held within the

state in which the judgment was rendered." With respect to the effect of judgments *in personam* of the courts of one state when sued on in the courts of another state, Pennoyer *v.* Neff stands with every decision I have found, except Delano *. v.* Joplin, which will presently be referred to.

The defendant's appearance to enter into the recognizance gave the court jurisdiction to make his contract of record and to proceed upon it *in rem* against the defendant's property within its jurisdiction according to the law and practice of the court, but did not confer jurisdiction to enter a judgment *in personam* which was capable of having any force or effect in another jurisdiction.

Nor is the objection to the judgment in this case unsubstantial to any degree. In the suit upon the recognizance the defendant was at liberty to interpose various defences in exoneration of his liability thereon, arising from matters *in pais* occurring subsequent to the judgment in the original action, and triable before the court in which the judgment against him was rendered, as issues of law or fact are triable in due course of legal procedure. In this suit the judgment of record on the recognizance, if it be of any validity, is a finality, and debars the defendant from all defences which existed before the entry of judgment against him.

To sustain the demurrer to this plea as pleaded to the second count, the plaintiff's counsel relies on *Delano* v. *Joplin,* 1 *Litt.* (*Ky.*) 117, and *Cone* v. *Cotton,* 2 *Blackf.* (*Ind.*) 82. In Delano *v.* Joplin, a suit was sustained on a judgment recovered in another state on *scire facias* against special bail upon a recognizance where the judgment was obtained by default upon two returns of *nil habet.* The ground of decision appears to have been that the bail was a party, or a *quasi* party, to the original suit, and chargeable with notice of its progress; that if summoned he is summoned to answer matters of record, and the judgment against his principal is conclusive against him, and that therefore there was no need of the same care to bring him into court to subject him to his undertaking as there is with regard to defendants in original

actions where the matters in controversy are entirely *in pais*, and have never been settled and ascertained by judicial determination. This reasoning entirely ignores the fact that bail may have defence extraneous to the record, and that every person who is condemned is by a fundamental law entitled to be summoned before he is condemned, whether he has or has not a defence. Cone *v.* Colton has no application to this controversy. The case was decided adversely to the suit, before the question of the effect of a judgment by default in *scire facias* on two returns of *nihil* was reached.

On the other hand, in *Robinson* v. *Ward's Executor*, 8 *Johns.* 86, the validity of such a judgment was denied. In that case Ward had become bail for one Miller, in the Court of Common Pleas of Addison county, in the State of Vermont, and judgment in the suit had gone against his principal. By the law of Vermont the proceeding against bail was by attachment, *capias*, and *scire facias* combined in one writ. Such a writ was issued and served by attaching certain personal property of the bail, and also published as ordered by the court, and thereupon judgment by default was entered. On this judgment a suit was brought in the State of New York. In deciding the Vermont judgment to be a nullity, the court said, "that to bind a defendant by a judgment when he was never personally served or had notice of the proceedings, would be contrary to the first principles of justice, and whether the proceedings were valid and according to the course of the court in the place where such judgment was obtained, would make no difference." And after citing cases, the court continued: "The principle on which these decisions turn applies to the present case, notwithstanding Ward was sued as bail in Vermont. The proceedings against him were in the nature of a new suit, and the bail might have had a good and substantial defence to make. There is, therefore, the same reason for his having notice as in any other case." *Fenton* v. *Garlick*, 8 *Johns.* 194, is a similar precedent, in which a judgment recovered in another state by default against a garnishee in attachment, on rule to show cause in the nature of a writ of *scire*

*facias,* not served upon him within the jurisdiction of the court granting the rule, and to which he had not appeared, was adjudged a nullity, although the original process of garnishment had been personally served on him in that jurisdiction.

But it is useless to search for precedents on this head. The decisions that have been cited from the federal courts have settled the law upon principles adverse to the plaintiff's case.

The second plea is a plea of the statute of limitations to the second count of the declaration. That count is founded upon the recognizance, which is set out in the second count, and the averments in it are substantially the same, omitting the proceedings thereon by *scire facias,* and of judgment thereon in the Pennsylvania court.

I agree with the Chief Justice that our statute of limitations is not a bar to such an action.

I think judgment should be entered for the defendant on the demurrer to the first plea, and for the plaintiff on the plea of the statute of limitations.