Lawson *v.* Acton.

LAURA LAWSON

*v.*

MARTHA W. ACTON, EVALINE CORSEN et al.

[Decided June 24th, 1898.   Filed January 4th, 1899.]

A widow in possession, by permission of the heirs, of all the land of which her husband died seized, permitted the taxes assessed upon the same during her occupation to remain in arrear and unpaid for many years, and twenty-two years after the husband's death letters of administration were taken out upon his estate by a person pretending to act in the interest of the widow, who made an application to the orphans court for an order to sell lands based upon a statement showing that there was no personal estate, and falsely stating that the deceased was indebted for taxes to a large amount, upon which application the orphans court made an order of sale, and the land was sold and purchased by the widow, the heirs-at-law being in a foreign state and having no actual notice of the proceeding, or that the taxes were in arrear, until after the conveyance.—*Held*, (1) that the order of sale having been procured by fraud, the sale thereunder was void as between the heirs-at-law and the widow; but (2) a mortgagee of the widow, without actual notice of the fraud, other than that disclosed by the proceedings in the orphans court, cannot, under the decisions in New Jersey, be held chargeable with notice of the fraud, although the fraud be apparent on the face of the papers; (3) that the heirs-at-law are entitled to a remedy over against the administrator and the widow severally for the amount which they shall lose by reason of the fraudulent proceedings. *Semble*, that while the orphans court has general jurisdiction of the sale of lands of decedents to pay their debts, it can exercise that jurisdiction in a particular case only upon application in writing being made by a personal representative

of the decedent, and statutory notice given to the heirs-at-law or devisees, and an order of sale not based upon such acquisition of jurisdiction would be void; and that a purchaser of real estate under such order of sale is bound to observe whether or not there has been such an application, but under the rule in New Jersey he is not bound to take notice of any indications of fraud apparent upon the face of the application.

Heard on bill, answer, plea, replication and proofs in open court.

The complainant is one of the heirs-at-law of Samuel Lewis, deceased, late of the county of Camden, who died in 1870, seized of certain lands in the city of Camden. The object of the bill is to set aside a sale and conveyance of them by the administrator of Lewis, under an order of the orphans court of the county of Camden, to Lewis' widow, Elizabeth Corsen, and a mortgage made by Mrs. Corsen to the defendant Martha W. Acton.

The bill charges, first, fraud practiced upon the orphans court by the defendant C. W. T., a real estate broker of Camden; second, want of jurisdiction in the court to make the sale; and third, notice to Mrs. Acton, the mortgagee, of the defects in Mrs. Corsen's title.

Mrs. Acton, the mortgagee, denies all fraud or notice of any, and by plea claims the position of a *bona fide* purchaser without notice, resting her title upon the validity of the order of sale made by the orphans court.

The facts of the case are these: Lewis, the grandfather of the complainant, and the husband of Mrs. Corsen, died in 1870, seized of the premises (which consist of a house and two lots of land, making in all forty feet front and one hundred feet deep, in the city of Camden), leaving the defendant Mrs. Corsen his widow, and leaving several heirs-at-law residing in different Western States. His widow was permitted by the heirs-at-law to occupy the premises, no attempt at partition or assignment of dower being made. About two years after his death she married a second husband, Mr. Corsen, who subsequently died, leaving her the second time a widow. She permitted the taxes on the premises to fall in arrear, and they were threatened with a sale.

Lawson v. Acton.

No proof was offered, nor can any inference from the facts be drawn, that any of these taxes accrued in the lifetime of Lewis, the former owner.

About the 1st of June, 1892, C. W. T., having, presumably, learned these facts, applied to the surrogate of the county of Camden for letters of administration on the estate of Lewis, and produced to him a paper witnessed by him, purporting to be a renunciation by Mrs. Corsen in favor of his administration, and asking that C. W. T. be appointed administrator.

The signature of Mrs. Corsen to that renunciation is a forgery.

On the 7th of June, 1892, C. W. T. presented his formal petition for administration, setting forth that Lewis died on the 15th of September, 1870, leaving a widow, Evaline Lewis, and two children, Sylvanus E. Lewis and Reba M. Stickney, one living in Indiana and the other in Ohio, and asking for administration. He also presented an administrator's bond, purporting to be signed by himself, Mrs. Corsen and one Herman Morgner. The original paper being produced in court, the signature of Mrs. Corsen is shown to be a palpable forgery. Morgner is said to have been a United States recruiting sergeant. On the strength of these documents, letters of administration were issued to him. On the same day he made affidavit that there was no personal property belonging to the deceased that came to his hands, and on the same or the next day he applied, by petition, to the orphans court, asking for an order of sale of lands to pay debts on account of the insufficiency of the personal property. In the petition he states the personal estate as nothing and the debts as follows:

| | |
|---|---|
| Taxes on the two lots | $248 |
| Costs and commissions | 52 |
| | $300 |
| January 1st, 1889.  To service of M. B. Taylor, for Lewis estate | 10 |
| Total | $310 |

and leaving a deficiency of that amount.

M. B. Taylor was a well-known counselor-at-law of Camden county, who, at that time, had been dead several years; and it is to be observed that the bill does not pretend to be for services rendered to Lewis in his lifetime, who had then been dead twenty years, but for services rendered the Lewis estate.

On the strength of that petition, verified by C. W. T., the orphans court granted an order to show cause why the land should not be sold to pay debts of the intestate, and on the return of that order and the proof of its publication in a newspaper in Camden, an order for sale was made September 2d, 1892, and a new bond given by C. W. T., with the same Herman Morgner, the recruiting sergeant, and one William S. Darnell, as sureties.

The administrator subsequently reported that he had sold the land to Mrs. Corsen for $100. The sale was confirmed on the 9th of December, 1892, and a conveyance made by the administrator, C. W. T., to Mrs. Corsen. He then took from Mrs. Corsen a mortgage upon the premises to himself for $400, dated December 9th, 1892. He then settled his account in the orphans court, charged himself with $100 from the sale of the land and credited himself with $10 paid to the estate of M. B. Taylor, with surrogate's fees, printing and advertising, and $7 allowed to himself as commissions, making the precise total of $100.

The claim of M. B. Taylor was not presented under oath and no attempt was made at the hearing to show that it had the least foundation in truth and honesty.

C. W. T., from time to time between that date and the month of June, 1893, paid taxes amounting to $273.89, as shown by copies of the vouchers on file in the tax office in the city of Camden, but to a friend of Mrs. Corsen who called on him about it, he claimed to have paid only $245 of taxes and interest.

He then applied, in behalf of Mrs. Corsen, to Mr. Caleb D. Shreve, of the Camden bar, for a loan of money on mortgage on the property, and Mr. Shreve agreed to loan him $450 for the defendant Mrs. Acton, who was a client of his, living in Philadelphia, and set about examining the title in the ordinary

Lawson v. Acton.

way, employing therefor the West Jersey Title and Guaranty Company, who furnished him with an abstract of the title but not a guarantee of it.    It does not appear what, if any, examination was made of the papers in the surrogate's office with a view of looking into the foundation of the proceedings for the sale of the lands or the regularity thereof.    The sum of $450 was actually advanced by Mrs. Acton to C. W. T., as the agent of Mrs. Corsen, and she executed to Mrs. Acton the mortgage in question, dated May 6th, 1893.    Out of this money C. W. T. paid the balance of the taxes and expenses.    The interest falling in arrear, Mrs. Acton filed a bill to foreclose her mortgage, and her suit proceeded to a decree, execution and advertisement, all without any actual notice to the heirs of Samuel Lewis, until the advertisement of the sale under foreclosure, when one of them, the complainant herein, filed the present bill, and an order was thereon made, staying the sale until final hearing.

*Mr. George H. Peirce*, for the complainant.

*Mr. Caleb D. Shreve*, for the defendant Mrs. Acton.

PITNEY, V. C.

The learned counsel for Mrs. Acton attempted at the hearing to justify the conduct of C. W. T., on the ground that his intention was good, but that he made a mistake in the means employed to accomplish the end in view.

I cannot accede to that argument.    And I think the position is not improved by the justification set up in C. W. T.'s answer (not supported by the least proof), which is, briefly, that M. B. Taylor in his lifetime had been counsel for Mrs. Corsen, and that she received notice from the city authorities that her property would be sold, or had been sold, for taxes, and applied to C. W. T. to assist her in the premises, and that he undertook it, and, having consulted the surrogate, was advised by him that the proper plan was to have the property sold by proceedings in the orphans court, and the title vested in Mrs. Corsen, so that she could make a mortgage on it and pay the taxes and save the

property for a home.   He says that this was necessary because her title was only that of a dowress, and that she could not raise money by a mortgage.   This is true, but did not in the least justify him in advising her to procure the title by the means suggested, or justify her in acting upon his advice.   His duty and her duty plainly was to notify the heirs-at-law, the residence of two of whom was set up in his application for the sale of the land, and give them an opportunity to come forward and pay the taxes (if the widow was unable to pay them), and exercise their pleasure as to permitting her any longer to occupy the premises.

I think the case is not within the rule established in *Spinning* v. *Spinning, 16 Stew. Eq. 215.*   I think the circumstances warrant the inference that the widow was permitted by the heirs to occupy the premises upon the understanding that she would pay the taxes, repairs, &c.   It is to me quite impossible to believe that the heirs were acting, or rather resting, upon the supposition that the widow was allowing the taxes for all these years to fall in arrear.  · Be that as it may, it was the least she could do under the circumstances to keep down the taxes.   So far as the case shows, her husband died possessed of no other property.

The end proposed, namely, to procure the title to be vested in the widow, was therefore a dishonest one, and cannot receive the sanction of this court.

Then the application to the court was in itself a plain fraud—so plain and palpable that it seems strange it should have escaped the attention of the judges ; and the fact that it did escape their attention is the only circumstance in the case to support the allegation of the answer that the scheme was devised by the surrogate.   C. W. T. knew perfectly well that it was necessary that there should be a debt of Samuel Lewis, in order to warrant the orphans court in selling land, and so he produces the charge of $10 in favor of the estate of M. B. Taylor to give a color of a debt of the deceased.   And this shows that he knew that the taxes were not the debt of the decedent, and would not justify the orphans court in selling land.

I come, therefore, without difficulty to the conclusion that the

whole proceeding in the orphans court was founded upon a fraud practiced upon that court by C. W. T.; that the debts for which the lands were sold were not the debts of the decedent, but were in effect the debts of Mrs. Corsen; that she was, in fact, the purchaser of the lands of the heirs of her husband at a sale made to raise money to pay what in morals, if not in equity, was her own debt, and that as between her and the complainant and the other heirs of Samuel Lewis her title must be declared void. And if the attempt had been to foreclose the mortgage given by Mrs. Corsen to C. W. T., which was canceled when Mrs. Acton's mortgage was taken, there would be no difficulty. Neither Mrs. Corsen nor C. W. T., or, indeed, any person claiming under her with notice of the fraud, could derive any advantage from those proceedings.

Counsel for Mrs. Acton claims that she is in the situation of a *bona fide* purchaser without notice of this fraud.

A learned and elaborate argument was presented to me by him in favor of three propositions—*first*, that the orphans court had complete and unlimited jurisdiction over the subject-matter before it, and that, having acted, its decree cannot be questioned collaterally, and hence, *second*, it was not the duty of Mrs. Acton, in examining the title of Mrs. Corsen, to look into the proceedings in the orphans court and see whether there was anything defective in the jurisdictional facts upon which the order of sale was based; and *third*, that if she, by her counsel, had examined the proceedings in the orphans court, nothing in fact would have been disclosed that would suggest fraud or otherwise put her upon inquiry.

The extent and character of the jurisdiction of the orphans court in New Jersey, in matters of this kind, have been the subject of much discussion and may be considered as thoroughly settled by the following cases: *Wilmurt* v. *Morgan* (unreported), decided by Chancellor Williamson and decided at length by Chancellor Vroom in *2 Gr. Ch. 166; Pittenger* v. *Pittenger, 2 Gr. Ch. 156; Den* v. *Hammel, 3 Harr. 73* (where the lines of jurisdiction were clearly stated by Mr. Justice Ford, and his language in that behalf has been substantially adopted in every

8

case which has since arisen); *O'Hanlin* v. *Den, Spenc. 31* (see pp. *40, 50*); *Den* v. *O'Hanlin, 1 Zab. 582*; *Runyon* v. *India Rubber Co., 4 Zab. 467*; *Young* v. *Rathbone, 1 C. E. Gr. 227*; *Plume* v. *Howard Savings Institution, 17 Vr. 211*; *Clark* v. *Costello, 30 Vr. 234*.

Notwithstanding some general and rather sweeping expressions contained in later opinions, I can find nothing to warrant the notion that the orphans court has been put upon any higher basis than that of the courts of common law in the matter of acquiring jurisdiction of the particular matter. With regard to those courts there can be no question that a judgment *in personam* of a common-law court must show jurisdiction of the person. The remark of Chief-Justice Beasley in *Price* v. *Ward, 1 Dutch. 225* (at p. *227*), is apt. He says: "The record of every common-law judgment, though no appearance has been entered or defence made, regularly shows upon its face the jurisdiction of the court over the person of the defendant. The declaration avers that the defendant is in custody or that he was summoned or attached to answer, or that he is present in court in his own proper person or as an officer of the court."

I apprehend that a judgment *in personam* of a common-law court which failed to show on its face jurisdiction of the person would be void. And it is perfectly well settled that the question of actual jurisdiction of the person in such cases may always be inquired into. The cases in New Jersey on this subject are the following: *Moulin* v. *Insurance Co., 4 Zab. 223*; *Price* v. *Ward, 1 Dutch. 225*; *Mackay* v. *Gordon, 5 Vr. 286*, and *Elsasser* v. *Haines, 23 Vr. 10*.

The decree of sale in this case, however, was not a decree *in personam*, but a decree strictly *in rem*. The physical object of the decree—the land in question—was situate within the territorial jurisdiction of the court, and the subject-matter of the suit was the sale of that land to pay the debts of the deceased. Of the subject-matter the court had, by statute, undoubted general jurisdiction; and it was within its power also to obtain jurisdiction *pro hac vice* of the persons interested in the land, by publication, without personal service. This mode of obtaining juris-

Lawson *v.* Acton.

diction or *quasi*-jurisdiction of the person is necessary in all cases of this kind, otherwise there might be no remedy in case the owners of the land lived beyond the territorial jurisdiction.

But to say that the court has general jurisdiction of the sale of lands of decedents to pay debts of the decedent, is no more than to say that it has power to acquire such jurisdiction in particular instances by certain proceedings, and the jurisdiction to proceed at all against the particular land depends, by the statute, upon an application by an executor or administrator to sell the lands for the payment of the debts. In my judgment, there must be a written application by the executor or administrator to the orphans court, and it must appear to have been actually presented. I apprehend that a mere order of the orphans court directing a sale of lands of a decedent by a personal representative, in the absence of any application for that purpose, would be void, precisely as would a mere entry of judgment *in personam* by a common-law court without any service of process on the defendant or appearance by him, or the entry of a decree in this court not based upon a bill filed and process served thereon, or an appearance by the defendant. And, in my judgment, a party claiming title through a sale by an order of the orphans court to pay the debts of the decedent, is chargeable with notice of whether or not, in fact, such written application was made.

This leads to the conclusion that the purchaser from Mrs. Corsen is chargeable with notice that an application was made, by petition, by the administrator in this case. Such petition is recited in the order to show cause why a sale should not be made, and was, in fact, upon the files of the court, open for inspection.

This brings us to the question whether or not she is chargeable with notice of its contents, and, if so, whether an inspection of the paper itself was sufficient to give her notice of the fraud in this case, or, which is the same thing, to put her upon further inquiry. And I think she is chargeable with notice of the contents of the petition, and, if the matter were *res nova*, I should say that she was chargeable with notice of the fraud.

The petition shows that the decedent had been dead over twenty years, and that the debts, for the payment of which a sale was ordered, were, first, a claim by M. B. Taylor, for $10, for services rendered to the " estate of Samuel Lewis;" and second, for $248, for taxes against the property in question. The claim of Taylor was clearly not a debt of the decedent, and the strong presumption, with regard to the taxes, was that they accrued long since his decease. The injustice done by the transaction was, as I have said, palpable and manifest. Mrs. Corsen, an elderly and nearly imbecile woman, was, with innocence on her part, perhaps, by the fraudulent practices of C. W. T., vested with the title in fee of premises of which she had really only a dower right, on the strength of her own default to pay the taxes levied against them and which it was her duty to pay. I think that the adoption and enforcement of a rule that the purchaser is chargeable with notice of fraud apparent on the face of the papers would be a safeguard against such a fraud as has been practiced here, and would not be any hardship on the purchaser. An examination of the authorities cited on this topic by Mr. Freeman, in his treatise on " Judgments," and also in his treatise on " Void Judicial Sales," shows that in many of the states of the Union a rule something like that obtains.

But I feel constrained, by authority in this state, to hold that the purchaser was not bound to notice the *indicia* of fraud just stated. That authority is the famous *Leake Case*, reported, as above cited, in *Spenc. 31* and *1 Zab. 582*. The circumstances of that case were these : Leake died seized of lands in Bergen county, leaving no heirs, so that they escheated to the state. Some years afterwards letters of administration were taken out on his estate and application made to sell land for payment of debts. The character of the application in that case is set forth in the opinion of Chief-Justice Hornblower in *Spenc. 40,* where he uses this language: " But, in my opinion, it would be against public policy and private security to authorize the orphans court to order a sale of lands which have escheated to the state. This very case affords a striking commentary on such a practice. A foreigner comes into our state and purchases a valuable farm ;

Lawson v. Acton.

he has a wife and children in Europe, whom he intends to bring hither, but death overtakes him before he can effect his purpose. A stranger, as in this case, having no claims upon the deceased or his property, gets administration, *trumps up an account*, and, under an order of the orphans court, obtained upon an *ex parte* application, sells the whole estate to pay debts, *when it is manifest upon the face of his own account* that he had not one dollar of debt to pay. Is it not better that the state, as guardian of such property, should take it under its care and see that it is applied to the payment of debts, if any, and the surplus be given to the widow and children of the deceased, or to such persons as, by the ties of nature and consanguinity, would be best entitled to it?"

This statement shows the case to be much like the present. Messrs. Justices Nevius and Whitehead, who did not agree with the majority of the court in the result, did agree in holding that the sale in that case was valid. *Spenc. 50, 51.* And when the case reached the court of errors and appeals the point was taken that the sale by the orphans court was void on the ground of fraud, but the court stopped counsel on the other side on that point. *1 Zab. 586, 587, 597.* It is true that those were mere *dicta*, not necessary to the decision of the cause, because that decision was against the parties taking the point upon other grounds, to wit, that the orphans court had no jurisdiction to sell the lands which had escheated to the state. But they were the *dicta* of distinguished judges in two courts after listening to elaborate arguments by the leaders of the bar, and are so far in consonance with the general strain of decision of similar questions in this state that I feel constrained to follow them.

The protection of heirs against such frauds must be found in judicial precautions for giving notice to non-residents by mail and by increased vigilance on the part of the courts.

It must be observed that the petition in this case was quite sufficient to give the court jurisdiction of the particular matter, upon the principle laid down by the late Chief-Justice Beasley in *Plume* v. *Howard Savings Institution, 17 Vr. 211* (at *pp. 227, 228*). The question there involved was the jurisdiction of the

orphans court to grant letters of administration upon the estate of a supposed decedent. The grant in that case was based upon a written petition, the substance of which is set out on pages 226 and 227, and the objection was that the petition did not show that the intestate was actually dead. With regard to that aspect of the case the chief-justice says that, though the court may have fallen into error in determining that he was dead, there was a petition presented which made what he happily called a colorable case and which gave the court jurisdiction.

In this case the presentation of the petition gave the court jurisdiction of the particular matter, and the only question is whether the facts did not put a purchaser upon inquiry as to whether or not there was a fraud practiced upon the court.

The complainant is not entitled to relief as against Mrs. Acton, but is entitled to relief against both Mrs. Corsen and C. W. T. for reimbursement of whatever she shall lose by the fraudulent proceedings in the orphans court.

I will advise a decree in accordance with these views.