**UNITED STATES of America,
Plaintiff,**

v.

**Josephine E. JACOBS, Administratrix of the Estate of Michael S. Jacobs, Deceased; Twentieth Century Sporting Club, Incorporated, Defendants.**

**Civ. No. 254-56.**

United States District Court
D. New Jersey.

April 5, 1957.

Rehearing Denied June 29, 1957.

Wise & Wise, Red Bank, N. J., Archibald A. Patterson, New York City, and William T. Wichman, Red Bank, N. J., of counsel, for Josephine E. Jacobs, Adm'x of Estate of Michael S. Jacobs, Deceased.

Chester A. Weidenburner, U. S. Atty., and George J. Rossi, Asst. U. S. Atty., Newark, N. J., Charles K. Rice, Asst. Atty. Gen., Andrew D. Sharpe and Jerome S. Hertz, Attorneys, Department of Justice, Washington, D. C., for the United States.

FORMAN, Chief Judge.

In the first count of the complaint in this case, as amended, the plaintiff, the United States of America, alleges that the Commissioner of Internal Revenue assessed the defendant, Twentieth Century Sporting Club, Incorporated, a New York corporation (hereinafter called Twentieth Century), on July 3, 1952, for the deficiency in its 1946 income, excess profits and declared value excess profit taxes in the amount of $21,086.92, and $100,118.83, plus interest, and on February 19, 1953, for a like deficiency in the amount of $13,500.87 for the year 1948, plus interest, or an aggregate of $134,-706.12; that the said defendant Twentieth Century is entitled to credit for $39,973.05 collected against the said assessments by virtue of plaintiff's tax levy, leaving a balance due of $94,733.57 together with interest; and that the late Michael S. Jacobs, prior to his death was, and his estate, of which the defendant Josephine E. Jacobs is administratrix, now is, indebted to the said defendant Twentieth Century in the sum of $173,-701.71, which debt is subject to the tax

liens arising out of the said assessments on defendant Twentieth Century's property and rights to property in the sum of $94,733.57, as aforesaid.

In the second count of the complaint, in the form of an amendment thereto, the plaintiff alleges that during and after the period 1943 to 1947 the said Michael S. Jacobs was a shareholder and an officer and director of the defendant Twentieth Century; that during the said period 1943 to 1947 the defendant Twentieth Century made a series of loans to him totaling $173,701.71; that the said Michael S. Jacobs in his capacity as an officer and director of the defendant Twentieth Century knew and assented to the making of the said loans on which there is, as alleged, a balance of $154,701.71 still due; that the assessments and levies were made on the defendant Twentieth Century, as described in the first count of the complaint, leaving an unpaid balance of $94,733.57 still due and owing by Twentieth Century; that under the provisions of the New York Stock Corporation Law, McK.Consol. Laws, c. 59, Section 59, the said Michael S. Jacobs was, and his estate now is, personally liable for the corporate tax debt, which debt arose prior to the repayment of the above mentioned loans; that the liability of the estate of Michael S. Jacobs to the plaintiff United States is direct and not derivative and that it is not barred from asserting such liability under the New York statute by any state statute of limitations.

Plaintiff demands that the merits of all claims and liens upon the alleged debt of Michael S. Jacobs be finally determined and that the court order a distribution according to the findings of the court in respect to the interest of the parties herein.

The defendant Josephine E. Jacobs, Administratrix of the Estate of Michael S. Jacobs, deceased, in probate proceedings pending in the Monmouth County (New Jersey) Surrogate's Court, contends in her motion for summary judgment that the debts alleged to be owing from Michael S. Jacobs and his estate to Twentieth Century are barred by the statute of limitations; that the United States has no greater rights with respect to these alleged debts than the defendant Twentieth Century, and that the United States did not acquire title to these debts prior to the expiration of six years from the respective dates on which they were incurred.

For the purpose of this motion the parties have stipulated facts as noted in the margin hereof.[1]

1. "It is hereby stipulated by and between the parties hereto by their respective attorneys:

"1. Michael S. Jacobs died a resident of Monmouth County, New Jersey, on January 24, 1953. His estate is now the subject of probate proceedings pending in the Monmouth County Surrogate Court. Josephine E. Jacobs is the duly qualified and acting administratrix of the said estate.

"2. For many years prior to his death, and at all times mentioned herein, Michael S. Jacobs was an officer, director and shareholder of the defendant Twentieth Century Sporting Club, Inc., which is duly incorporated under the laws of the State of New York.

"3. The records of Twentieth Century Sporting Club, Inc., contain a sheet, a copy of which is annexed hereto and marked Exhibit 'A'. Entries on the said sheet show debits to Michael S. Jacobs in the amount of $170,000 and credits to Michael S. Jacobs in the amount of $19,000, leaving a net debit balance in the total amount of $151,000.

"4. Twentieth Century Sporting Club, Inc., issued 16 checks on the dates and in the amounts set forth in the 'debit' column of Exhibit 'A'. Copies of the said 16 checks are annexed hereto and are marked Exhibits 'B-1' to 'B-16', inclusive.

"5. Michael S. Jacobs endorsed and delivered to Twentieth Century Sporting Club, Inc., 2 checks on the date and in the aggregate amount set forth in the first entry of the 'credits' column of Exhibit 'A' and 6 checks on the dates and in the amounts of the next six items in the 'credits' column of Exhibit 'A'. The said 8 checks are annexed hereto and marked Exhibits 'C-1' to 'C-8', inclusive.

"6. On or about April 22, 1947, Twentieth Century Sporting Club, Inc., declared a dividend payable to Michael S. Jacobs in the sum of $24,000. Of this

The plaintiff resists the defendant's motion on the ground that on July 11, 1952 and March 23, 1953, the dates for which the plaintiff's liens for taxes arose, the decedent Michael S. Jacobs, was indebted to Twentieth Century and such debt was enforceable under the New York law.

Exhibit "A" referred to in paragraph 3 of the stipulation (Note 1) is a ledger account of Twentieth Century with Michael S. Jacobs in which he is debited

amount, it paid him $11,555.60 by a check, a copy of which is annexed hereto and marked Exhibit 'D'. The balance of the said $24,000 was credited as the final entry in the 'credits' column of Exhibit 'A'.

"7. In addition to the net debit of $151,000, as reflected in Exhibit 'A', it is the contention of the plaintiff that there was reflected in the records of the Twentieth Century Sporting Club, Inc., a similar debit for the period prior to 1943 in the amount of $9,436.76. In addition to the above amounts, Twentieth Century Sporting Club, Inc., issued to the order of Michael S. Jacobs on or about March 16, 1944, a check in the total amount of $13,265.05, a copy of which is annexed hereto and marked Exhibit 'E'. It is the contention of the plaintiff that Michael S. Jacobs was, therefore, indebted to Twentieth Century Sporting Club, Inc., in the total amount of $173,701.71 and that none of the said amount has been repaid.

"8. In accordance with the understanding reached at the pretrial conference and solely for the purposes of a motion for summary judgment to be filed by the defendants, it is assumed that the amounts shown in the 'debit' column of Exhibit 'A' were borrowed by Michael S. Jacobs from Twentieth Century Sporting Club, Inc., on the dates recorded in Exhibit 'A'. Solely for this same purpose it is assumed that the amounts shown in the 'credits' column of Exhibit 'A' were repaid by Michael S. Jacobs to Twentieth Century Sporting Club, Inc. It is agreed that nothing contained in this stipulation is intended to, or shall be interpreted as a waiver of defendants' right to contend, upon the trial of this action, that the decedent, Michael S. Jacobs, was not indebted to defendant, Twentieth Century Sporting Club, Inc. It is further specifically agreed that the assumptions made above, for purposes of a motion for summary judgment shall not constitute, for purposes of trial, an acknowledgement of any debt alleged to be outstanding from Michael S. Jacobs to Twentieth Century Sporting Club, Inc.

"9. The records of Twentieth Century Sporting Club, Inc., and of Michael S. Jacobs, deceased, do not contain any pertinent information with respect to the transactions recorded in Exhibit 'A' other than the information actually contained in the said Exhibit 'A', and the other annexed exhibits.

"10. In July, 1952, and February, 1953, the Commissioner of Internal Revenue made assessments against the defendant Twentieth Century Sporting Club, Inc., for income, excess profits and declared value excess profits taxes, plus interest thereon, in the following amounts and for the following years:

| Fiscal Year Ended | Amount |
| --- | --- |
| 2–28–46 | $21,086.92 |
| 2–28–46 | 100,118.83 |
| 2–28–48 | 13,500.87 |
| Total | $134,706.62 |

"11. The above mentioned assessment lists were duly received by the District Director of Internal Revenue for the Upper District of Manhattan on July 11, 1952, and on March 23, 1953.

"12. The District Director of Internal Revenue promptly notified the defendant Twentieth Century Sporting Club, Inc., of the assessments and demanded payment thereof.

"13. Notices of tax liens in favor of the United States were filed with the Register of the City of New York and with the Clerk of the United States District Court for the Southern District of New York on January 30, 1953, and with the County Clerk, Monmouth County, Freehold, New Jersey, on April 11, 1953.

"14. By means of execution on a levy, the United States has received and credited against the above assessments the total amount of $39,973.05, leaving unpaid, due, and owing on the said assessments the total amount of $94,733.57 together with statutory interest.

"15. Defendant, Twentieth Century Sporting Club, Inc., filed federal income tax and excess profits tax returns, as required, for its fiscal years ending February 28, 1946, 1948, 1949 and 1950. Photostatic copies of the returns filed for those years are annexed hereto and marked Exhibits G, H, I, and J, respectively. No inference shall be drawn from the mere presence or absence, among the annexed exhibits, of returns for any particular year or years."

with 16 items aggregating $170,000, under dates and amounts as follows:

| Date | Debits |
|---|---|
| 1943 | |
| Apr 19 | $20,000.00 |
| May 12 | 10,000.00 |
| 1944 | |
| Sept 6 | 10,000.00 |
| 1945 | |
| Mar 23 | 9,000.00 |
| " 23 | 1,000.00 |
| Aug 28 | 12,000.00 |
| Dec 4 | 10,000.00 |
| 1946 | |
| May 1 | 10,000.00 |
| " 7 | 25,000.00 |
| July 9 | 20,000.00 |
| " 10 | 5,000.00 |
| " 22 | 3,000.00 |
| Sept 6 | 10,000.00 |
| Dec 21 | 9,000.00 |
| 1947 | |
| Jan 4 | 10,000.00 |
| Aug 9 | 6,000.00 |

He is also credited on this sheet with items as follows:

| 1947 | Credits |
|---|---|
| Jan 2 | $ 1646.40 |
| " 9 | 813.20 |
| " 13 | 813.20 |
| " 22 | 813.20 |
| " 29 | 823.20 |
| Feb 3 | 823.20 |
| " 10 | 823.20 |
| Apr 22 | 12444.40 |

For the purpose of this motion each of the above listed debits is to be regarded as a loan from Twentieth Century to Michael S. Jacobs.

Twentieth Century was a service organization for the promotion of prize fighting and the decedent Michael S. Jacobs and his wife were respectively president and vice president and sole stockholders, with the work of the corporation mainly effected by Michael S. Jacobs.

Plaintiff claims a right to collect from the Jacobs' estate the tax debt which Twentieth Century owes, by virtue of assuming Twentieth Century's position as creditor to Michael S. Jacobs. Here, the six year statute of limitations to recover on contract obligations is the same in both New Jersey and New York. Since the plaintiff was suing for recovery on a derivative claim of a contract obligation between Twentieth Century and Michael S. Jacobs, the plaintiff assumed Twentieth Century's claim with all its infirmities, including any barring by the statute of limitations. See Guaranty Trust Co. of N. Y. v. United States, 1938, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224.

Plaintiff alleges that the United States, when asserting sovereign or governmental rights, is not subject to state statutes of limitations. Defendant, however, counters with Guaranty Trust Co. v. United States, supra, to the effect that even the sovereign can be barred by a state statute of limitations when it acquires property or rights to property by assignment, and quotes the Court as saying, 304 U.S. at page 142, 58 S.Ct. at page 793:

" * * * Proof, under a plea of limitation, that the six-year statutory period had run before the assignment offends against no policy of protecting the domestic sovereign. It deprives the United States of no right, for the proof demonstrates that the United States never acquired a right free of a pre-existing infirmity, the running of limitations against its assignor, which public policy does not forbid."

Defendant further buttresses his contention that the sovereign is subject to the bar of the statute, when its claim is derivative, by citing State, by Parsons v. Standard Oil Co., 1950, 5 N.J. 281, 74 A. 2d 565, affirmed 1951, 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078, for the proposition that the sovereign, acting on a derivative right, cannot revive claims already barred by the New Jersey statute of limitations.

However, the principle reflected by these cases goes no further than to hold that claims already barred by the

state statute of limitations at the time when the government acquired its rights to the claim, are as effectively barred to the government as to anyone else. But this is radically different from any implication that a state statute of limitations operates with equal indifference against governmental rights to assert a derivative claim, and the rights of private parties. For the truth of the matter is that the running of a state statute of limitations is suspended at the moment when the government acquires the claim, or right, to the property. At the moment of acquisition, it acquires its property right with all the infirmities attached thereto, including the bar of the statute. But if the statutory period has not expired at the time of acquisition, the statutory time ceases to run.

As the United States Supreme Court held in United States v. Nashville, C. & St. L. R. Co., 1886, 118 U.S. 120, 125, 6 S.Ct. 1006, 1008, 30 L.Ed. 81:

"* * * They (the United States) take such (negotiable) paper subject to all the equities existing against the person from whom they purchase *at the time when they acquire their title;* and cannot, therefore, maintain an action upon it, if at that time all right of action of that person was extinguished, or was barred by the statute of limitations." (Emphasis supplied.)

And in United States v. Summerlin, 1940, 310 U.S. 414, on pages 416, 417, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283, the Court stated:

"It is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights. (Cases cited.) * * *.

"* * * When the United States *becomes entitled to a claim,* acting in its governmental capacity and asserts its claim in that right, it cannot be deemed to have abdicated its governmental authority so as to become subject to a state statute putting a time limit upon enforcement."

██ The running of the statute against the Jacobs' debt to Twentieth Century was suspended when the District Director of Internal Revenue received the tax assessment against Twentieth Century, under section 3671 of Title 26 U.S.C., which is the section applicable to the instant case and provides as follows:

"Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."

The time when received by the collector has been held to mean the date when the assessment list, signed by the Commissioner of Internal Revenue, has been received in the office of the collector of the district in which the property was situated. Old Colony Insurance Co. v. Lampert, D.C.N.J.1955, 129 F.Supp. 545, affirmed 3 Cir., 1955, 227 F.2d 520; In re Victor Brewing Co., D.C.Pa.1944, 54 F.Supp. 11, affirmed 1945, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56; Citizens State Bank of Barstow, Tex. v. Vidal, 10 Cir., 1940, 114 F.2d 380.

Section 3670 of Title 26 U.S.C. provides as follows:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

██ On the date when the first assessment list was received by the District Director on July 11, 1952, in the amount of $121,205.75 plaintiff acquired a lien against Jacobs for all moneys borrowed (and not repaid) by Jacobs from Twentieth Century subsequent to July 11, 1946. This would represent a maxi-

mum of $38,000. Conversely, all moneys borrowed (and not repaid) by Jacobs from Twentieth Century prior to July 11, 1946 were barred from recovery by the statute of limitations.

Plaintiff, though acquiring the claim against Jacobs derivatively and suing in a contract action on debt, is suing in its own sovereign and governmental capacity to collect taxes, and a state statute of limitations will not be permitted to bar the sovereign from recovery against its will. The policy supporting this view is the protection of "public revenues from loss resulting from the inadvertence or neglect of public employees". Eureka Printing Co. v. Div., etc., Dept. of Labor & Industry, 1956, 21 N.J. 383, 387, 388, 122 A.2d 345, 347. As the New Jersey Supreme Court went on to say, there is nothing, of course, to prevent the government from enacting legislation making itself subject to a limiting period. In the case at bar, plaintiff is subject to a limiting period which it has imposed on itself. This limiting period for recovery, whether by levy or proceeding in court for taxes due it, is six years after the lien arises—the date on which the assessment is received by the local District Director. This is provided for by 26 U.S.C. § 276(c) in the following language:

"Where the assessment of any income tax imposed by this chapter has been made within the period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court, but only if begun (1) within six years after the assessment of the tax, * * *."

Here, *both* levy (see Eiland v. United States, infra) and court proceedings have been instituted within the six year period following the tax assessment on July 11, 1952, so that plaintiff had not been barred by its own statutory limitation.

Defendant contends that plaintiff's filing of a notice of lien on April 11, 1953 with the County Clerk of Monmouth County, New Jersey (defendant's home county) created no new rights in plaintiff, and that the latter, at best, acquired its rights to the Jacobs' property only after notice was given to Mrs. Jacobs in September 1953, at which time recovery on any and all of the Jacobs' debt to Twentieth Century would have been barred by the six year state statute of limitations. However, this completely ignores the claim to the Jacobs' property which arose on the receipt of the tax assessments on July 11, 1952. The effect of the failure to serve notice of lien on Mrs. Jacobs lies only in the danger that any payment on the debt which Mrs. Jacobs might have made to Twentieth Century before receipt of notice of lien, would bar recovery from her by plaintiff up to the amount so paid. The operation and effect of liens and notices on debts owed by a third party is excellently set out in the case of United States v. Eiland, 4 Cir., 1955, 223 F.2d 118, which dealt with a comparable situation. There, the United States, prior to a taxpayer's bankruptcy, had served a notice of a tax lien on taxpayer's debtor. The trustee in bankruptcy objected that the failure to file a notice in the county court defeated the rights of the United States, despite the levy and notice served on the debtor of the bankrupt. In overruling the objection the court said:

"It should be noted in the first place, that what we are dealing with here is, not a levy upon corporeal property, where the property is left in the possession of the bankrupt to serve as a basis for credit, but a levy upon an indebtedness with service of notice upon the debtor, the effect of which is to transfer to the United States the right to receive payment of the indebtedness up to the amount of the tax. A lien for taxes upon failure to pay on demand is provided for by 26 U.S.C. § 3670; and this lien arises upon deposit of the assessment list with the Director, 26 U.S.C. § 3671. Where taxpayer neglects or refuses to pay the taxes due, assertion of this lien is authorized by 26 U.S.C. § 3692 by levy upon all property and rights

to property of taxpayer except such as is specifically exempted by 26 U.S.C. § 3691, which has no application here. Upon such levy, it becomes the duty of the debtor to pay the indebtedness levied upon, up to the amount of the tax, to the Director. 26 U.S.C. § 3710. * * *

"There can be no question, we think, but that the lien for taxes provided by the statute can be asserted against intangible property such as a debt. (Cases cited.) *And we think it equally clear that the proper way to assert the lien is by levy and notice such as was served here.* * * *

"A creditor ordinarily perfects a lien upon a debt by attachment and garnishment with service of notice thereof upon the debtor. (Cases cited.) When this has been properly done, the effect thereof is to give to the attaching creditor a lien upon the indebtedness for the amount necessary to satisfy the judgment rendered in the proceedings in his favor. The effect of the federal taxing statutes to which we have referred is to create a statutory attachment and garnishment in which the service of notice provided by statute takes the place of the court process in the ordinary garnishment proceeding. * * *." (Emphasis supplied.) 223 F.2d at pages 120, 121.

Speaking further of the filing of such liens in the United States court and county offices, the court went on to say: " * * * and it would be unreasonable to apply their provisions to debts, since debtors could not be expected to search the clerk's office before paying a debt, to see whether or not tax liens had been filed against their creditors, nor could banks be expected to make such search before honoring checks drawn on deposits. With respect to such intangible property entirely different provisions are needed and have been made by the taxing stat-utes. Prior to levy and notice, the debtor may discharge his debt by payment to the creditor, whatever may have been filed in the clerk's office; thereafter it may be discharged as to the amount of the tax, only by payment to the Director. 26 U.S.C. § 3710(b)." 223 F.2d at page 122.

The effect of the serving of notice on Mrs. Jacobs in September 1953, therefore, was a *levy* upon her property, but a lien had existed since July 11, 1952. As stated earlier, however, this gave the plaintiff a claim only on the unsatisfied debts incurred since July 11, 1946, an amount subject to further proof, but appearing to be no more than $38,000. All unsatisfied debts incurred prior to July 11, 1946, were effectively barred by the six year state statute of limitations on contract obligations, under this theory.

Plaintiff next argued that there was an acknowledgment of the indebtedness by Michael S. Jacobs that took it completely out of the statute of limitations because of the several repayments made between January 2 and April 22, 1947, as set out above, and because in May of 1946 Michael S. Jacobs signed and filed as corporate president an income tax return for the year ending February 28, 1946, on behalf of Twentieth Century, with an accompanying corporate balance sheet in which there was included a heading "Notes and Accounts Receivable" under which there was an amount representing the net loans or advances from Twentieth Century to Michael S. Jacobs. Similar tax returns with accompanying data were filed for subsequent years, including February 28, 1950. Plaintiff contended that this case came precisely within the decision of In re Meyrowitz' Estate, Sur., 1952, 114 N.Y.S.2d 541, which does have some points of similarity with the one at bar. There, too, the decedent had been a resident of New Jersey; his will was probated in New Jersey; the corporation which sued the estate was one in which the decedent Meyrowitz had been president, director, and a controlling stock-

holder; decedent had borrowed money from the corporation and the latter was seeking to recover; and beneficiaries under his will resisted recovery on the ground that the time limitation in the statute had run. The court found that the statute of limitations had not expired because of the acknowledgment of the debt by the decedent, and the existence of a mutual, open and current account.

■ But, in finding acknowledgment, the court had before it not only the bookkeeping records and financial statements accompanying the tax returns, but also an affidavit which the decedent made for a state inheritance tax proceeding in which he swore that he personally owed the indebtedness to the corporation. While Jacobs did sign the 1946 return and Mrs. Jacobs signed the 1950 return, the returns for the intervening years were signed by an employee of Twentieth Century. Plaintiff's contention that the bar of the statute was lifted by acknowledgment of the debt by Michael S. Jacobs' signature is not persuasive. It is well established by New York law (and New York law is substantively controlling), that acknowledgment must be clear, specific, unambiguous, and consciously made in recognition of the entire debt. Crow v. Gleason, 141 N.Y. 489, 36 N.E. 497. This test is hardly met by pointing to Michael S. Jacobs' signature on a single corporate tax return. Other tax returns signed by his wife and another officer of the corporation cannot be considered to be Michael S. Jacobs' acknowledgment. Nor does the bare record of payment, without more, meet the test. Adams v. Olin, 140 N.Y. 150, 160, 35 N.E. 448.

■ Plaintiff also contends that the estate of decedent Michael S. Jacobs should be equitably estopped from raising the bar of the statute. This theory is advanced because of the complete domination of the corporation by Michael S. Jacobs and the virtual total identification of the corporate entity with Michael S. Jacobs. In support of this contention, plaintiff again cites the case of In re Meyrowitz' Estate, supra, and quotes the following language:

"* * * It would be contrary to fundamental principles of equity and justice if one in charge of a corporate enterprise could borrow its funds, continuously report the loans as due from him and then avoid payment by pointing to his failure to sue himself or to some ambiguity in his acknowledgment. * * *." 114 N.Y.S.2d at page 547. Although this language is strong and clear, it borders on dictum because fundamentally the case was decided on other grounds, namely acknowledgment and the existence of a mutual, open, and current account. Moreover, the quoted language in the opinion of the surrogate court, though well-reasoned, must be weighed in the light of the opinion of the Second Circuit Court of Appeals in the case of Rieser v. Baltimore & Ohio Railroad Company, 1955, 228 F.2d 563. In the Rieser case, a diversity suit, the court expressly commented on the strictness of New York law, but found that it was controlled by the decisional law of the New York courts which would not support a tolling of the statute on equitable grounds. The Rieser case was a suit by creditors of the defunct Alton Railroad Company against the Baltimore and Ohio Railroad Company for moneys allegedly owed to Alton by the Baltimore and Ohio because of the latter's mismanagement during a period when the Baltimore and Ohio was in complete control of Alton. The court there said, at page 565:

"True, while it remained under the domination of B & O, its sole stockholder, Alton, in practical terms, as virtually B & O's slave, could not have brought suit against B & O. But, under the New York statute of limitations as construed by the New York courts, the period of that domination did not suspend the running of the statute. * *."

And in a footnote to the above, the court commented on the strict interpretation

given to the statute by the New York courts, in the following manner:

"This interpretation, out of line with the interpretations of similar statutes in many other jurisdictions, seems harsh and inequitable. But, of course, we must abide by what the New York courts say its statutes mean." 228 F.2d at page 565.

Of course the complete control of Twentieth Century by Michael S. Jacobs and the impracticability of the idea that his corporation, Twentieth Century, would sue him for payment of loans made to him impels one to draw aside the "corporate veil". But in the Rieser case the court ruled against succumbing to such temptation. It negates the plaintiff's proposition that the decedent, Michael S. Jacobs, would be barred from invoking the statute of limitations had Twentieth Century sued him for the indebtedness.

So, if this case is ruled by a six year statute of limitations, there appears to be no theory advanced by the plaintiff whereby it can overcome defendant's motion for summary judgment now seeming to encompass the bulk of the debt, which was incurred prior to July 11, 1946.

2. "§ 48. Actions to be commenced within six years.
"The following actions must be commenced within six years after the cause of action has accrued:
"1. An action upon a contract obligation or liability express or implied * * *.
"2. An action to recover upon a liability created by statute * * *."

3. "2A :14–1.
"Every action at law for * * * recovery upon a contractual claim or liability, * * * not under seal * * * shall be commenced within 6 years next after the cause of any such action shall have accrued."

4. "§ 59. Liability of directors for loans to stockholders.
"*No loan of moneys shall be made by any stock corporation, except a moneyed corporation, or by any officer thereof out of its funds to any stock-*

In claiming that the cause of action is barred by the statute of limitations, the defendant administratrix indicates that the question of forum would not appear to be a factor of major significance to any of the parties concerned in this case, for both New York and New Jersey have six-year statutes of limitations on contract obligations, the applicable New York statute being the Civil Practice Act, § 48,[2] and in New Jersey, N.J.S.A. 2A :14–1.[3] She also claims that the above New York statute of limitations (six years) is applicable to liabilities created by the provisions of the New York Stock Corporation Law, § 59.[4]

Regardless of the consequences of the New York statute of limitations, I am constrained to the opinion that the New Jersey statute of limitations rules this case.

■■■ Although the law of the state where the cause of action arises governs the substantive rights of the parties, the law of the forum decides whether the cause of action is barred by its own statute of limitations "though (the) action is not barred in the state where the cause of action arose." Restatement, Conflict of Laws, § 603; Goodrich, Conflict of Laws, p. 240 (3d Ed.1949). And, "if ac-

*holder therein,* nor shall any such corporation or officer discount any note or other evidence of debt, or receive the same in payment of any instalment or any part thereof due or to become due on any stock in such corporation, or receive or discount any note, or other evidence of debt, to enable any stockholder to withdraw any part of the money paid in by him on his stock. *In case of the violation of any provision of this section, the officers or directors making such loan, or assenting thereto, or receiving or discounting such notes or other evidences of debt, shall, jointly and severally be personally liable to the extent of such loan and interest,* for all the debts of the corporation contracted before the repayment of the sum loaned, and to the full amount of the notes or other evidences of debt so received or discounted, with interest from the time such liability accrued." (Emphasis supplied.)

tion is not barred by the statute of limitations of the forum, an action can be maintained, though action is barred in the state where the cause of action arose." Restatement, Conflict of Laws, § 604.

"It is well settled that * * * it is the law of the forum which * * * controls." Florida Wholesale Drug v. Ronson Art Metal Works, D.C.N.J. 1953, 110 F.Supp. 573, 574; Gordon v. Loew's Incorporated, D.C.N.J.1956, 147 F.Supp. 398, 411. "The remedy is regulated by the State where the action is brought." Jaqui v. Benjamin, Err. & App.1910, 80 N.J.L. 10, 77 A. 468; McClellan v. F. A. North Co., Sup.Ct.1936, 187 A. 337, 14 N.J.Misc. 760, affirmed 118 N.J.L. 168, 191 A. 753; Leek v. Wieand, Ch.Div.1949, 2 N.J.Super. 339, 350, 63 A.2d 828, 834.

The forum being a federal court sitting in the District of New Jersey, the state law which governs the applicability of the statute of limitations is that of New Jersey. See Austrian v. Williams, 2 Cir., 1952, 198 F.2d 697, 700.

■ The statute in New Jersey which is similar to the New York Stock Corporation Law, Section 59, is N.J.S.A. 14:8–10 (formerly § 48 of the New Jersey Corporation law) which reads as follows:

"Loans to stockholders and officers prohibited.

"No corporation shall loan money to a stockholder or officer thereof. If any such loan be made the officers who make it, or assent thereto, shall be jointly and severally liable, to the extent of such loan and interest, for all the debts of the corporation until the repayment of the sum so loaned."

In the case of Cole v. Brandle, E. & A. 1939, 127 N.J.Eq. 31, 11 A.2d 255, 129 A.L.R. 1250, in which the opinion of the

Court of Chancery below was adopted, the court discussed section 48 as follows:

" '* * * I regard said section 48 as a remedial and not a penal statute; it is authority for an action for damages for *breach of a fiduciary duty*. Stated generally, it is not unlawful for corporate officers to make loans of corporate funds, but by statute the legislature has forbidden such loans to be made to stockholders and has said that disregard of such prohibition will expose the officers making or assenting to such loans, to a civil liability for such portion of the loans as may be found necessary to protect creditors. In other words, the statute requires corporate officers to replace funds they loan wrongfully, to the extent necessary to repair the damage resulting from their wrongful acts (Cases cited), so that section 21 [the two and one year limitations for actions on penal statutes] of the statute of limitations is not applicable. Neither is liability sought to be fastened on defendants for a simple debt, but for *a special sort of obligation created by a special statute* and it is *therefore a debt on a specialty*, to which section 1 of said statute [the six year statute of limitations —now N.J.S.A. 2A:14–1] does not apply (cases cited) and it is to be noted that section 48 of the corporation act provides that liability of the officers shall continue "until the repayment of the sum so loaned." ' " (Emphasis supplied.) 127 N.J.Eq. at pages 38, 39, 11 A.2d at page 259.

It might be inferred from the above language that the court was invoking that provision of the New Jersey statute of limitations which applies a 16 year period to "specialties".[5] But this is

5. N.J.S.A. 2A:14–4. "16 years; actions on lease, specialty or award; effect of payments made.
"Every action at law for rent or arrears of rent, founded upon a lease under seal, every action at law upon a single or

penal bill under seal for the payment of money only, upon an obligation under seal conditioned for the payment of money only, upon a recognizance or upon an award under the hands and seals of arbitrators for the payment of money only

negated in the case of Miller v. Board of Chosen Freeholders, Hudson County, 1952, 10 N.J. 398, 91 A.2d 729, wherein that court approved the conclusions of Chief Justice Beasley in Elsasser v. Haines, Sup.Ct.1889, 52 N.J.L. 10, 18 A. 1095, to the effect that the words "obligation" and "specialty", as used in the statute of limitations, import an instrument under seal for the payment of money. A close reading of the quoted language in Cole v. Brandle, supra, reveals that the court characterized the obligation in that case as a "debt on a specialty". This was the use of the word "specialty" in a loose sense, as referred to in the case of Elsasser v. Haines, supra, 52 N.J.L. at page 24, 18 A. 1095. However, it is to be noted that the court in the Cole case avoided classifying the obligation as a 16 year specialty, and simply held that it was not subject to either the two or one year or the six year limitation. It called particular attention to the provision that liability of the officers shall continue "until the repayment of the sum so loaned." See also Cowenhoven v. Freeholders, Sup.Ct. 1882, 44 N.J.L. 232. The tenor of the decisions of the New Jersey courts was recently reiterated in State v. Atlantic City Electric Co., 1957, 23 N.J. 259, 128 A.2d 861, wherein it was said:

> " * * * The proper rule appears to be that the running of the statute of limitations is suspended only when the liability is dependent solely upon statutory provisions. E. g., Miller v. Board of Chosen Freeholders, supra; * * *." 23 N.J. 259, at page 270, 128 A.2d at page 868.

It is the view in New Jersey that no common law cause of action lies in a creditor of a corporation to enable him to recover from *an officer* of the corporation who assented to the lending of corporate funds. See Cole v. Brandle, supra, 127 N.J.Eq. at page 38, 11 A.2d at page 259.[6] It follows that the statutory liability involved in the case at bar rests on no common law ground for recovery. It is true that in this case a creditor-debtor relationship existed between the plaintiff and Twentieth Century on the one side, and between Twentieth Century and Michael S. Jacobs on the other, but the liability created by statute is wholly independent of any creditor-debtor relationship which might arise between plaintiff and Michael S. Jacobs as a result of assignment or lien. For the statute imposes liability upon Michael S. Jacobs not as a borrower of corporate funds, but only as an officer of a corporation who made or assented to the loan.

It is our interpretation of State v. Atlantic City Electric Co., supra, 23 N. J. at page 270, 128 A.2d at page 868, that "liability * * * dependent solely upon statutory provisons" means that the statutory cause of action must have no counterpart or base rooted in a common law cause of action, but does not preclude other or alternative avenues or theories of recovery.

To support its thesis that the present action is barred by the New York six year statute of limitations, defendant administratrix points to the case of Braman v. Westaway, Sup.1945, 60 N. Y.S.2d 190, wherein loans were made by a Delaware corporation in violation of Delaware corporation law. In Braman, a suit brought more than six years after the loans were made, was dismissed although section 36 of the Delaware Cor-

---

shall be commenced within 16 years next after the cause of any such action shall have accrued. If, however, any payment is made on any such lease, specialty, recognizance or award within or after such period of 16 years, an action thereon may be commenced within 16 years next after such payment, and not thereafter."

6. " * * * Stated generally, it is not unlawful for corporate officers to make loans of corporate funds, but by statute the legislature has forbidden such loans to be made to stockholders and has said that disregard of such prohibition will expose the officers making or assenting to such loans, to a civil liability for such portion of the loans as may be found necessary to protect creditors."

poration Law created an "unlimited" duration of liability. Section 36 of the Delaware Corporation Law reads as follows:

"No corporation created under this Chapter shall make any loan of money to any officer of such corporation * * * and if any such loan be made, the officer or officers who make it or assent thereto *shall be* jointly and severally *liable until repayment of the sum so loaned* with interest * * *." (Emphasis supplied.) [8 Del.C. § 143].

We note, of course, the striking similarity between section 36 of the Delaware Corporation Law, and its counterpart in New Jersey, N.J.S.A. 14:8–10, regarding liability "until repayment". The court in Braman dismissed the case even though it were to regard the Delaware statute as creating liability of unlimited duration. This was done on the basis that section 13 of the New York Civil Practice Act provides that where a cause of action arises outside New York, an action cannot be brought in the courts of New York after the expiration of the time limited by the laws either of New York or of the state or country where the cause of action arose. Since New York had a six year statute of limitations governing such actions, the action was barred.

However, the important and relevant principle here involved is that the Braman case concerned a cause of action arising outside of New York and in a jurisdiction allowing a longer period of limitations (Delaware), but brought in New York. Since the statute of limitations of the law of the forum is applicable, the New York six year statute of limitations was applied.

The principle involved in the case at bar, therefore, is the same, though the facts be practically reversed. Here, the cause of action arose in New York (with its six year statute of limitations), but was brought in New Jersey, with its longer statute of limitations, and so New Jersey being the forum, its statute of limitations governs.

The liability of an officer under N.J.S.A. 14:8–10 (formerly section 48 of the New Jersey Corporation Law) is substantially identical with that of an officer under section 59 of the New York Stock Corporation Law. Hence, an application of the New Jersey statute of limitations to the liability of an officer of a New Jersey corporation would have the same result as its application to the liability of an officer of a corporation under the New York laws, by virtue of the proceedings being brought in the forum of a federal court in New Jersey, though the cause of action arose in New York. Therefore the defendant administratrix cannot have the benefit of insulation against the claimed liability of her decedent as an officer of a New York corporation, to the extent of unpaid loans made to a stockholder of the corporation with his assent, by virtue of any provisions of the New Jersey statute of limitations, held herein to be the applicable statute. Her motion for summary judgment must be denied on this score.

Since the determination of this motion does not dispose of the case, it will be placed on the next pre-trial conference calendar and proceed regularly to trial.

An order in conformity with the above should be submitted by plaintiff on notice to defendant.

### On Petition for Rehearing

This matter arises on a petition by defendant for rehearing of a motion for summary judgment which had been denied in an opinion of this court.

For the purpose of the motion for summary judgment only, the parties had stipulated that defendant Twentieth Century Sporting Club was indebted to plaintiff United States in the sum of $94,733.57 for unpaid taxes, and that decedent Michael S. Jacobs had borrowed moneys in excess of this amount from the defendant corporation. Michael S. Jacobs and his wife Josephine E. Jacobs were the sole stockholders of the defendant corporation, of which Michael S. Jacobs was both a director and its president. Recovery from decedent's estate

was sought on two grounds: one, under its tax liens against the corporation the plaintiff acquired the corporation's right to collect the Jacobs' debt; secondly, the plaintiff sought recovery under Section 59 [1] of the New York Stock Corporation Act, McKinney's Consol.Laws, c. 59.

Defendant's motion for summary judgment was predicated on the theory that the statute of limitations effectively blocked recovery by plaintiff on either basis. This court found that the statute of limitations had indeed precluded plaintiff's recovery on all but approximately $38,000 for the derivative claim acquired by way of the tax liens, but that complete recovery could be had under Section 59 although accrual of the cause of action under that section exceeded six years. This conclusion was reached only after an examination of Section 59's companion statute in New Jersey, N.J.S.A. 14:8–10 [2], revealed that New Jersey law construed the statute of limitations on this statute as being suspended "until repayment" of the loan has been completed. For a more complete discussion of this point, see earlier opinion of this court in U. S. v. Jacobs, supra.

▮▮▮ In his application for leave to reargue the motion for summary judgment, petitioner makes a two-fold contention: initially, that an incorrect view of the New Jersey statutes of limitation was applied; and secondly, that the application of a New Jersey statute of limitations, rather than a New York statute of limitations, was a denial of the full faith and credit clause [3] of the Federal Constitution. The latter will be discussed first.

One of the principal cases cited by petitioner to support this contention is Order of United Commercial Travelers of America v. Wolfe, 1947, 331 U.S. 586, 67 S.Ct. 1355, 91 L.Ed. 1687. There, a suit on an insurance policy was brought in a state court of South Dakota against a fraternal benefit society incorporated in Ohio, and licensed to do business in South Dakota (as well as in other states). The society's constitution, valid in Ohio, prohibited its members from bringing an action on a death claim after the expiration of a six-month period following the Society's disallowance of the claim. The suit was brought after the expiration of the six-month period set forth in the Society's constitution, but within the South Dakota time limitation for commencing suits on contracts. It was held that the Federal Constitution requires South Dakota to give full faith and credit to the public acts of Ohio under whose laws the society had been incorporated, and therefore the six month limitation applies.

1. "§ 59. Liability of directors for loans to stockholders

"No loan of moneys shall be made by any stock corporation, except a moneyed corporation, or by any officer thereof out of its funds to any stockholder therein, nor shall any such corporation or officer discount any note or other evidence of debt, or receive * * * or discount any note, or other evidence of debt, to enable any stockholder to withdraw any part of the money paid in by him on his stock. In case of the violation of any provision of this section, the officers or directors making such loan, or assenting thereto, or receiving or discounting such notes or other evidences of debt, shall, jointly and severally be personally liable to the extent of such loan and interest, for all the debts of the corporation contracted before the repayment of the sum loaned and to the full amount of the notes or other evidences of debts so received or discounted, with interest from the time of such liability accrued."

2. N.J.S.A. 14:8–10

"No corporation shall loan money to a stockholder or officer thereof. If any such loan be made the officers who make it, or assent thereto, shall be jointly and severally liable, to the extent of such loan and interest, for all the debts of the corporation until the repayment of the sum so loaned."

3. Article IV, § 1

"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

The Court concluded that the Society being a membership organization, its own members could impose terms applicable and binding upon all members. Indeed, the Court continually referred to the validity of restrictive or mandatory provisions applicable to *members* of a corporation (with seemingly special emphasis on the fraternal), and that *such* provisions are to be given full faith and credit.

It might be noted that the cases discussed in the Court's opinion to support the application of full faith and credit are those in which the relationship of the parties is that of a member of a corporation or society, with the self-same corporation or society, whereas the instant suit involves a creditor of the corporation.

The Court likewise expressly affirmed the general conflict of laws principles as reflected in the Restatement, Conflict of Laws, Sections 603 [4] and 604 [5] which were relied on in denying petitioner's original motion for summary judgment. The Court did say, however, that § 604 could stand modification, and observed that many states had adopted "borrowing" statutes of limitations which provide that when an action has been barred in the jurisdiction where the cause of action arose, it is barred in the forum as well. But New Jersey has no "borrowing" statute of limitations. Order of United Commercial Travelers of America v. Wolfe must be viewed, therefore, as not extending beyond the confines of a very restricted field—namely, compacts between associations and their members, and perhaps more specifically, between fraternal associations and their members.

A case which is dispositive of the Full Faith and Credit Clause point posed by petitioner is that of Wells v. Simonds Abrasive Co., 1953, 345 U.S. 514, 73 S.

Ct. 856, 97 L.Ed. 1211. In that case, suit was brought in a United States District Court in Pennsylvania because of diversity of citizenship, based on the wrongful death statute of Alabama, where the fatal accident had occurred. The Alabama statute, Code 1940, Tit. 7, § 123, permitted suit within two years. A similar Pennsylvania statute, 12 P.S. § 1603, limited suit to one year. The suit was brought after one year, but within a two-year period following accrual of the cause of action. Although the Alabama wrongful death act included within its provisions a two-year period within which to bring suit, summary judgment was granted the respondent, the District Court stating that

"the action being a diversity suit this Court is bound to apply the conflict of laws rule of the State of Pennsylvania, and by that rule the limitation of the Alabama statute has no controlling effect * * *." D.C.E.D.Pa.1951, 102 F.Supp. 519, 520, affirmed 3 Cir., 1952, 195 F.2d 814.

On appeal, the Supreme Court of the United States stated:

"We granted certiorari limited to the question whether this Pennsylvania conflicts rule violates the Full Faith and Credit Clause of the Federal Constitution", 1953, 345 U.S. 514, 516, 73 S.Ct. 856, 857, 97 L.Ed. 1211,

affirming the lower court's decision, it made the following observation:

"The rule that the limitations of the forum apply (which this Court has said meets the requirements of full faith and credit) is the usual conflicts rule of the states. [Footnote, Restatement, Conflict of Laws, § 603 (1934).] However, there have been divergent views when a foreign statutory right unknown to the com-

---

4. § 603.
 "If action is barred by the statute of limitations of the forum, no action can be maintained though action is not barred in the state where the cause of action arose."

5. § 604.
 "If action is not barred by the statute of limitations of the forum, an action can be maintained, though action is barred in the state where the cause of action arose."

mon law has a period of limitation included in the section creating the right. The Alabama statute here involved creates such a right *and contains a built-in limitation.* The view is held in some jurisdictions that such a limitation is so intimately connected with the right that it must be enforced in the forum state along with the substantive right. [Footnote, cases cited.]

"We are not concerned with the reasons which have led some states for their own purposes to adopt the foreign limitation, instead of their own, in such a situation. The question here is whether the Full Faith and Credit Clause compels them to do so. *Our prevailing rule is that the Full Faith and Credit Clause does not compel the forum state to use the period of limitation of a foreign state."* (Emphasis supplied.) 345 U.S. at page 517, 73 S.Ct. at page 858.

There are obvious differences between the Wells case and the one at bar, not only in the nature of the action, but in the fact that the statute of the foreign state creating the cause of action provided for a longer limiting period than the limiting period afforded by the forum, which is the reverse of the situation here. However, the significant point to be noted in the Wells case is that the Supreme Court did not regard the incorporation of a time limitation into the statute (the "built-in" feature) as materially altering the effect of conflict of laws rules on statutes of limitation.

The language quoted from the Supreme Court decision in Wells meets petitioner's full faith and credit argument head-on, for even assuming for the moment that Section 59 of the New York Stock Corporation Act could be viewed as incorporating within its provisions the six year limiting period for causes of action created by statute (Section 48, par. 2 of the New York Civil Practice Act), the Court rejected the idea that the forum must be controlled by the statute of limitations of the state where the

cause of action arose, by virtue of the full faith and credit clause.

 Wells, however, does not preclude the forum state, as a matter of local policy, from accepting the foreign statute of limitations as controlling. See Drinan v. A. J. Lindemann & Hoverson Co., 7 Cir., 1956, 238 F.2d 72. And the conflicts of law policy of the forum with regard to statutes of limitations will be operative on the federal district court sitting in that state. See Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079; Klaxon Co. v. Stentor Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. But Wells is silent on whether there is a proper distinction between the forum's opening its courts to suits barred in the foreign state by a "built-in" time limitation shorter than its own, and the forum's closing its courts when the reverse is true. I do not believe that Wells is intended to include both concepts, for were it otherwise, a state would simply be unable to create a cause of action which would be self-limiting in time. As a clarification of this point, the following language in Pennsylvania Co. For Insurances on Lives and Granting Annuities v. Deckert, 3 Cir., 1941, 123 F.2d 979, 985, is cogent:

"It has been held almost universally that when a statute creating a new cause of action *contains in itself* a statute of limitations, the limitation imposed becomes an integral part of the right of action created by the statute and so limits it that an aggrieved person cannot maintain his suit after the time fixed by the statute has expired." (Emphasis supplied.)

The difficulty arises, however, when the statute creating the cause of action does *not* contain within it a statute of limitations, but is held out as constructively containing such a limitation. The Restatement, Conflict of Laws, § 605 states the following:

"If by the law of the state which has created a right of action, it is made a condition of the right that it

shall expire after a certain period of limitation has elapsed, no action begun after the period has elapsed can be maintained in any state.

"Comment:

"a. This provision is not infrequent in the case of statutory wrongs and particularly in the case of the statutory action for wrongful death (see § 397, Comment b) [reference is to wrongful death actions]. The limitation need not be contained in the statute creating the right, but may be found in any statute *specially directed at a qualification of the right. A general statute of limitations is not construed as conditioning rights.*" (Emphasis supplied.)

If, therefore, the substantive right is extinct, no action could be brought in any forum. The question which necessarily follows, then, is whether Section 59 of the New York Stock Corporation Act has such a condition attached to it as would effectively limit the substantive right in any forum.

An examination of Section 59 reveals that it contains no limiting period within itself. Petitioner, however, claims that Section 48, par. 2, supra, of the New York Civil Practice Act (the statute of limitations for causes of action created by statute) is to be considered a conditioning part of Section 59. If this contention is valid, and Section 48, par. 2 is to be considered, in effect, an integral part of Section 59, then partial summary judgment would indeed have to be granted in favor of petitioner.

Petitioner cites Davis v. Mills, 1904,[6] 194 U.S. 451, 24 S.Ct. 692, 48 L.Ed. 1067, as strong support for his proposition that Section 48 is to be considered a substantive part of Section 59. In Davis, Justice Holmes is quoted as follows (194 U.S. at pages 453, 454, 24 S.Ct. at pages 693):

"The general theory on which an action is maintained upon a cause which accrued in another jurisdiction is that the liability is an *obligatio* which, having been attached to the person by the law then having that person within its power, will be treated by other countries as accompanying the person when brought before their courts. But, as the source of the obligation is the foreign law, the defendant, generally speaking, is entitled to the benefit of whatever conditions and limitations the foreign law creates. Slater v. Mexican National R., 194 U.S. 120, 24 S.Ct. 581, 48 L.Ed. 900. It is true that this general proposition is qualified by the fact that the ordinary limitations of actions are treated as laws of procedure and as belonging to the *lex fori*, as affecting the remedy only and not the right. But in cases where it has been possible to escape from that qualification by a reasonable distinction courts have

---

6. Along with Davis v. Mills, petitioner cites nine other cases to support what he describes as a "general rule" in Fletcher, Cyclopedia of Law of Private Corporations, Sec. 1302 (Vol. 3). That rule is as follows:

"An action to enforce the common-law liability of directors for mismanagement is governed by the statute of limitations of the forum rather than the statute of the domicile of the corporation; but the reverse is true where the action is to enforce a statutory liability."

However, Fletcher cites only two cases to support this, both hardly of recent vintage; one being Davis v. Mills when it was in the Circuit Court, 2 Cir., 1903, 121 F. 703, and the other, Brunswick Terminal Co. v. National Bank, 4 Cir., 1900, 99 F. 635, where a general stat-

ute of limitations not only referred to liabilities created by statute, but also to liabilities created by acts of incorporation. With the exception of Maki v. George R. Cooke, 6 Cir., 1942, 124 F. 2d 663, 146 A.L.R. 1352, to be discussed later, and Bournias v. Atlantic Maritime Co., 2 Cir., 1955, 220 F.2d 152, all other cases either contained "built-in" limiting periods which the forum state allowed to control, or were rent control cases discussing the effect of a built-in statute of limitations on the substantive right created by the statute. And in Bournias, the court found the limiting statute of the foreign state not specifically related to the statute creating the right so as to displace the statute of limitations of the forum.

been willing to treat limitations of time as standing like other limitations and cutting down the defendant's liability wherever he is sued. The common case is where a statute creates a new liability and in the same section or in the same act limits the time within which it can be enforced, whether using words of condition or not. The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358. But the fact that the limitation is contained in the same section or the same statute is material only as bearing on construction. It is merely a ground for saying that the limitation goes to the right created and accompanies the obligation everywhere. The same conclusion would be reached if the limitation was in a different statute, *provided it was directed to the newly created liability so specifically as to warrant saying that it qualified the right*." (Emphasis added in last three lines.)

The basic problem which the court in Davis wrestled with was whether a statute of limitations could either cut down or extinguish a right, and not with the problem of construing separate statutes. As Justice Holmes said, 194 U.S. at page 454, 24 S.Ct. at page 694, "If then, the only question were one of construction and as to liabilities subsequently incurred, it would be a comparatively easy matter * * * ."

Using the language quoted from Davis, petitioner would have this court believe that Section 48, par. 2 of the New York Civil Practice Act "was directed to the newly created liability (Section 59) so specifically as to warrant saying that it qualified the right". As a matter of construction, petitioner would conclude that a general statute of limitations, albeit referring to causes of action "created by statute", is so specifically directed to Section 59 of the New York Stock Corporation Act as to condition its substantive rights.

I can come to no such conclusion. Given the situation where there exists many statutes creating diverse causes of action, it is far too tenuous to infer that a statute of limitations applicable to statutory causes of action generally, was specially directed at and intended as an integral part of Section 59. In this connection, it should be noted that Section 48 was enacted long before the predecessor to Section 59, and could not, obviously have been enacted with the purpose in mind of being incorporated with Section 59. There is nothing to indicate that when Section 59 was enacted, it was contemplated that anything other than a general statute of limitations would apply to it.

The only case that petitioner cites which would appear to offer substantial strength for his argument that Section 48, par. 2 should be considered as being specifically directed to and an integral part of Section 59, is Maki v. George R. Cooke, 6 Cir., 1942, 124 F.2d 663, 665, 146 A.L.R. 1352. In Maki, a general statute of limitations referring to "causes of action created by statute" was construed as being so specifically directed to the substantive cause of action as to be considered a part of it. However, in Hutto v. Benson, 1954, 212 F.2d 349, 352, 354, even the Sixth Circuit casts doubt on Maki.

Petitioner's contention that "liability cannot extend beyond the time fixed by New York law" simply ignores conflict of laws rules. But to support his view, he cites Ragan v. Merchants Transfer & Warehouse Co., 1949, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520. Ragan, however, stands for the principle that the law of the forum, rather than the Federal Rules of Civil Procedure, 28 U.S.C.A., will be controlling upon a Federal District Court with regard to the tolling of the forum's statute of limitations, and is no more than a further clarification, or extension of Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Since the forum in instant case is in New Jersey, this court's approach is thoroughly consistent with Ragan.

As to his claim that an incorrect view of New Jersey law with respect to its

statute of limitations has been applied, petitioner maintains that New Jersey recognizes the limitation as part of the right, and not as a separate procedural matter, citing State by Parsons v. Standard Oil Co., 1950, 5 N.J. 281, 74 A.2d 565. The Standard Oil case, however, stands for the proposition, among others, that one can attain a vested right by operation of the statute of limitations in both real and personal property (without distinction), and such vested rights cannot be impaired by any legislative "lifting" of the bar of the statute (in this case, by means of the Escheat Act). The New Jersey view is that *if the remedy is barred,* the substantive right, if not destroyed, is reduced to the point where it is merely a "moral obligation sufficient only in the law to sustain a new promise without an independent consideration". State by Parsons v. Standard Oil, supra, 5 N.J. at page 295, 74 A.2d at page 571.

The important distinction in the instant case, however, is that, by virtue of the conflict of laws principle, the remedy is *not* barred in New Jersey. It is still for the law of the forum, New Jersey, to determine on the basis of its own statute of limitations and appropriate conflict of laws rules, whether a cause of action arising in another jurisdiction may properly be entertained in New Jersey.

Defendant also maintains that "even if the New Jersey courts applied their own internal law, the six-year New Jersey statute of limitations would apply in this case for the following reason: New Jersey will refer to the law of the other jurisdiction to determine the character of the cause of action. [Cases cited.]" It might be pointed out, initially, that if by "internal law" petitioner means "substantive" law, then his premise is false, for it is New Jersey procedural law which is being applied. It is not the New Jersey Corporation Act which this court is applying to a foreign corporation or its officers and directors, but the New Jersey statute of limitations applicable to that section of the New Jersey

Corporation Act which is similar to Section 59 of the New York Stock Corporation Act.

In saying that "New Jersey will refer to the law of the other jurisdiction to determine the character of the cause of action", petitioner states a truism. There is no disagreement relative to that point. Petitioner does not contend that the instant suit was not brought under Section 59 of the New York Stock Corporation Act (as one of the bases for plaintiff's suit); nor did this court's opinion of April 5 conclude that anything but Section 59 of the New York Stock Corporation Act was the basic substantive law. It merely applied the limiting period which New Jersey law has concluded is applicable to the substantive law, such limiting period being part of the procedural law applied by the forum.

Petitioner's final proposition is that the instant suit is "an action on the case", and so governed by the New Jersey six year statute of limitations. (Although the New Jersey six year statute of limitations, N.J.S.A. 2A:14–1, does not refer to "action upon the case", its predecessor statute, R.S. 2:24–1, did refer to actions upon the case.) But the relevant point is that New Jersey's general statute of limitations is not the one applicable to the present action. As stated earlier, the limiting period construed as applying to N.J.S.A. 14:8–10, the New Jersey statute almost identical to Section 59 is separate and distinct from the six-year general statute of limitations that might otherwise have been applied in its absence.

The denial of petitioner's original motion for summary judgment will remain undisturbed. As stated in the opinion of April 5, 1957, the determination of this motion does not dispose of the case, and it will be placed on the next pre-trial conference calendar and proceed regularly to trial.

An order in conformity with the above should be submitted by respondent, on notice to petitioner.